UNITED STATES of America, Appellee,

v.

Horace John KNIGHTS, a/k/a John Knights; Aaron McAdoo, Defendants,

Lyttleton Knights, Defendant–Appellant.

No. 1476, Docket 92–1016.

United States Court of Appeals, Second Circuit.

Argued May 6, 1992.

Decided June 23, 1992.

Lowell R. Siegel, Albany, N.Y. (Maynard, O'Connor & Smith, of counsel), for defendant-appellant.

Henry Greenberg, Asst. U.S. Atty., N.D.N.Y., Albany, N.Y. (Gary L. Sharpe, U.S. Atty., Paul D. Silver, Asst. U.S. Atty., of counsel), for appellee.

Before: FEINBERG, PRATT, and McLAUGHLIN, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Just before the trial of Lyttleton Knights and his co-defendants was scheduled to begin, Knights pled guilty and agreed to cooperate by testifying against one of the co-defendants. The plea agreement provided that the government would move for a "substantial assistance" downward departure under § 5K1.1 of the sentencing guidelines if the prosecution, in its "sole and unfettered discretion", was satisfied with Knights's cooperation. Knights testified, but the government refused to move for a downward departure. At his sentencing proceeding before the United States District Court for the Northern District of New York, Lee P. Gagliardi, *Judge*, Knights argued that the government's refusal was made in bad faith. The district court disagreed and explicitly found that the government had acted in good faith

when it refused to move for the downward departure.

The basis for the district court's holding, however, is unclear. Consequently, we vacate the sentence and remand for further consideration of whether the government acted in bad faith when it refused to make the substantial-assistance motion.

## BACKGROUND

On May 3, 1991, the government indicted Knights, his brother, Horace John Knights, and a third defendant, Aaron McAdoo, on nine counts relating to the possession and distribution of cocaine. With his trial imminent, on September 19, 1991, Knights, after negotiations with the government, entered into a plea agreement that included his pledge to cooperate with the government and testify, if necessary, as a government witness. The section of the document relating to Knights's cooperation provided:

5. Defendant agrees to cooperate fully with the United States Attorney's office, the Drug Enforcement Administration, and such other law enforcement agencies as either of the foregoing may require by: (a) *providing truthful information and testimony* concerning trafficking and attempts to traffick [*sic*] in controlled substances by defendant and others; and (b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings as may be required by the Office of the United States Attorney for the Northern District of New York.

6. The United States *reserves the right to evaluate the nature and extent of defendant's cooperation and to advise the Court of the nature and extent of any such cooperation at the time of sentencing.* The United States agrees that if, in the sole and unfettered discretion of the United States, the circumstances of defendant's cooperation warrant a departure by the Court from the Sentencing Guidelines range determined by the Court to be applicable, the United States will make a motion pursuant to Section [5K1.1] of the Sentencing Guidelines stating that defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. If it is determined by the United States to make such a motion, the amount of the departure requested in such motion will lie in the complete and sole discretion of the United States Attorney.

(emphasis added).

As is evident from this text, the agreement did not specify the kind of cooperation that Knights was expected to provide, but the record indicates that the government's principal reason for offering the agreement was to secure Knights's truthful testimony at the trial of co-defendant McAdoo. The government at oral argument before us failed to specify any other purpose or request for Knights's cooperation, and Knights's counsel indicated, without challenge, that the government sought no assistance from him other than his testimony at the McAdoo trial.

The next day, September 20, 1991, Knights pled guilty to count I of the indictment, which alleged a conspiracy to possess with intent to distribute and to distribute cocaine, *see* 21 U.S.C. §§ 841, 846, and the McAdoo trial began before Judge Gagliardi. As promised, Knights testified, as did his brother, who had also entered into a cooperation agreement. But the government did not fare well at the trial, and McAdoo was acquitted on all counts.

Two-and-one-half months later, the government informed Knights's attorney by letter dated December 12, 1991, that it would not move for a downward departure at sentencing. The letter disclosed no reason for this decision.

At the sentencing hearing before Judge Gagliardi on December 20, 1991, Knights contended that the government had acted in bad faith when it refused to make a substantial-assistance motion. In response, the government articulated several reasons for its decision to withhold the substantial-assistance motion. Crediting the government's reasons, Judge Gagliardi ruled from the bench that the government had acted in good faith. He then sentenced

Knights to 41 months' imprisonment, 3 years' supervised release, and a $50 special assessment.

On appeal Knights claims that the district court clearly erred in finding that the government's refusal to downwardly depart was made in good faith, and that he was entitled to a hearing to present evidence so that the district court could determine whether the government had acted properly in withholding the substantial-assistance motion.

## DISCUSSION

### A. *The legal landscape*

The Supreme Court recently confirmed that only the government may move to downwardly depart on the basis of a defendant's substantial assistance, *see Wade v. United States,* —— U.S. ——, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), noting that the sentencing guidelines give "the Government a power, not a duty, to file a motion when a defendant has substantially assisted." *Id.* at 1843. In *Wade,* the Supreme Court considered for the first time whether a district court may inquire into the government's refusal to move for a downward departure when a defendant claims that he has substantially assisted the prosecution. The Court held that limited review does exist and that

> federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive. Thus, a defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion, say, because of the defendant's race or religion.

*Id.* at 1843–44.

Significantly, however, the defendant in *Wade* cooperated "without the benefit of a plea agreement", *United States v. Wade,* 936 F.2d 169, 170 (4th Cir.1991), *aff'd,* —— U.S. ——, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), and he never argued at sentencing or on appeal that the requirement for the government's motion was "superseded in

this case by any agreement on the Government's behalf to file a substantial-assistance motion". *Wade,* 112 S.Ct. at 1843 (citing *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971)).

With Knights, of course, there was an agreement, and we may review it, as *Wade* recognizes, to see if the government has lived up to its end of the bargain. In *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971), where the Supreme Court analogized plea agreements to contracts in which the government induces a plea by making certain promises, the Court emphasized the importance of ensuring some kind of judicial review to enforce such agreements. *See id.* at 262, 92 S.Ct. at 498–99 ("when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"). Specific performance is an appropriate remedy for a prosecutor's breach of a plea agreement. *Id.* at 262–63, 92 S.Ct. at 498–99.

More specifically, specific performance may also be available when the government breaches a plea agreement containing a cooperation clause. *See United States v. Rexach,* 896 F.2d 710, 713–14 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990); *United States v. Khan,* 920 F.2d 1100, 1105 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991). In *Rexach* and *Khan,* this court subjected the cooperation provisions of plea agreements to an analysis similar to that conducted in *Santobello,* and provided the district courts with guidance for reviewing the government's refusal to move for a downward departure based on its evaluation of the defendant's assistance.

When the government's performance in a cooperation agreement is conditioned on its satisfaction with the defendant's efforts, as we noted in *Rexach,* this condition is not met "if the obligor is honestly, even though unreasonably, dissatisfied." *Rexach,* 896 F.2d at 713 (quoting

*Restatement (Second) of Contracts* § 228, Comment a) (internal quotations omitted).

■ Because the prosecution often is in the best position to evaluate the quality of a defendant's cooperation and to decide whether to make a substantial-assistance motion, this decision, like other prosecutorial determinations, may be subjected to only limited review. *See Rexach,* 896 F.2d at 713. Mindful of this deference, we held in *Rexach* that when a cooperation agreement allows for a substantial-assistance motion contingent on the government's subjective evaluation of a defendant's efforts to cooperate, the district court may review only to determine whether the prosecution based its decision on impermissible considerations such as race or religion, or "whether the prosecutor has made its determination in good faith." *Id.* at 714. Because the district court in *Rexach* correctly credited the government's explanation for its dissatisfaction with the efforts of its informant, *id.* at 714–15, there was no need to conduct a more detailed inquiry into the defendant's allegations of bad faith.

In *Khan* we addressed the question of whether a defendant who seeks to show prosecutorial misconduct or bad faith is entitled to a hearing on the issue. We concluded that although such a hearing was generally available, it was not required for Khan, who had failed to raise the bad-faith issue at sentencing. We nevertheless described a procedure for determining whether such a hearing would be necessary.

■ This procedure is fairly simple. When a defendant claims that the government has acted in bad faith in refusing to move for a downward departure, the government may rebut this allegation by explaining its reasons for refusing to depart. The defendant must then make a showing of bad faith "to trigger some form of hearing on that issue." *Khan,* 920 F.2d at 1106. We did not detail the kind of hearing that is required; whether it be merely oral argument or should include a formal evidentiary hearing is a matter that lies within the sound discretion of the district court. *See* U.S.S.G. § 6A1.3; *United*

*States v. Olvera,* 954 F.2d 788, 792 (2d Cir.1992) (procedure for resolving disputed sentencing factors rests in sound discretion of district court).

Against this legal landscape, we now consider Knights's contention that he deserved an evidentiary hearing.

## B. *The present proceeding*

■ On the eve of trial, after negotiations, the government and Knights agreed that Knights would plead guilty to the conspiracy count. In return, Knights agreed "to cooperate fully [by] providing truthful information and testimony concerning trafficking and attempts to traffick [*sic*] in controlled substances by defendant and others [and by] appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings as may be required by the Office of the United States Attorney for the Northern District of New York." The government agreed that after evaluating Knights's efforts it would, in its "sole and unfettered discretion", consider whether to move for a downward departure.

After Knights kept his promise and testified, the government exercised its "sole and unfettered discretion" and refused to make the motion for a downward departure, without which the court was bound to the guidelines range. As required by *Khan,* Knights then asserted that the government acted in bad faith. The government, seeking to explain its refusal to move, offered six reasons to the district court. We recognize that the language of the cooperation agreement vesting the government with "sole and unfettered discretion" served to create "broad prosecutorial discretion, limited only by the subjective good faith standard". *Rexach,* 896 F.2d at 714. But, even when reviewed under this permissive standard, none of the reasons offered by the government is sufficient, as a matter of law, to justify its conduct.

The reasons offered by the government are:

1. Knights's cooperation was untimely.

2. Knights was more culpable than co-defendant McAdoo, against whom he testified.

3. Knights pled guilty only because his brother had done so.

4. The plea agreement benefited Knights in other ways.

5. The clause in the plea agreement that promised the possibility of a substantial-assistance motion "was not something that was bargained for."

6. Knights's trial testimony was "inconsistent" with the testimony of his brother.

Reasons 1 through 4 all relate to circumstances that preceded the making of the agreement, and the government was aware of them at the time it promised to consider making the substantial-assistance motion. Not only would it be unfair for the government to rely upon such known, pre-agreement circumstances as reasons for not moving, it would have been fraudulent to have induced a defendant's plea with a promise that the government already knew it was not going to keep.

Reason number 5, that the clause promising the possibility of a substantial-assistance motion "was not something that was bargained for", is frivolous. The clause was part of the agreement, and there is no claim that it was included by mistake. Knights, therefore, was entitled to rely on it and to expect its good-faith performance.

Reason number 6, that Knights's trial testimony was "inconsistent" with that of his brother, is the only reason that is addressed to whether or not Knights performed his part of the agreement. The government, of course, is entitled to wide latitude in evaluating a defendant's cooperation. That latitude, however, does not permit it to ignore a defendant's efforts at cooperation simply "because the defendant is supplying information that the government does not want to hear", *Khan*, 920 F.2d at 1105 (citing *United States v. Galan*, 1989 WL 63110 (S.D.N.Y.1989)), or because the government ultimately loses its case against the co-defendant.

Insofar as this record reveals, the only cooperation asked of Knights, after he entered into the plea agreement, was to testify against McAdoo, which he did. Knights also agreed to testify truthfully, and if he failed to do so, the government was, of course, fully justified in refusing to make the substantial-assistance motion.

The government has not claimed, however, that Knights did not testify truthfully. All that it says is that his testimony was "inconsistent" with that of his brother. From all that appears in this record, it may well be that his brother, not Knights, was untruthful.

It is possible that the district court, in its own mind, having observed Knights's testimony and the other evidence at the McAdoo trial, and having heard the government's evaluation of that testimony, was satisfied that Knights had testified falsely. If so, however, the district court failed to say so.

Since none of the six reasons advanced by the government for withholding a substantial-assistance motion is sufficient, and since the district court's conclusory finding of good faith is not supported by reference to any other possible reasons, we reject the sentence that was imposed. We cannot uphold the district court's good-faith finding without knowing the basis for it.

Consequently, we vacate the sentence and remand for further proceedings on the issue of whether the government acted in bad faith in refusing to move for a downward departure. The district court is of course obliged in most cases to allow considerable deference to the government's evaluation of a defendant's cooperation. But where the contemplated cooperation involves solely in-court testimony, as it apparently did here, the district court is well-situated to review the defendant's performance of his obligations under the plea agreement. Therefore, one of the key issues on the remand should be the veracity of Knights's testimony.

## SUMMARY

The cooperation provisions of the government's plea agreement with Knights, when read in the context of the events revealed

by this record, are very narrow. The prosecutor wanted from Knights, and Knights promised to give him, truthful testimony at McAdoo's trial. Nothing more was asked. Since it is undisputed that Knights testified, he kept half of his agreement, and the government could not in good faith refuse to move for the downward departure unless Knights did not keep the other half, which was to be truthful in his testimony. Since this record does not contain a finding, or evidence, or even a claim, that Knights's testimony was untruthful, and since every other circumstance advanced by the government to show good faith was known to the government when it promised to make the motion, we cannot on this record uphold the sentence as imposed. Since there is some question as to the truthfulness of Knights's testimony, we remand for further proceedings to be focused upon the government's claimed bad faith in performing its obligations under the plea agreement.