**UNITED STATES of America,**

v.

**Steven HOFFENBERG, Defendant.**

**No. 94 Cr. 0273 (RWS).**

United States District Court,
S.D. New York.

July 21, 1994.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City (Jonathan Rosenberg, Asst. U.S. Atty., of counsel), for U.S.

Hoffman & Pollok, New York City (Jeffrey Hoffman, of counsel), for defendant.

*OPINION*

SWEET, District Judge.

Defendant Steven Hoffenberg has moved for an order specifically enforcing the Cooperation and Plea Agreement of September 23, 1993 (the "Agreement"), between Hoffenberg and the United States Attorneys' Offices for the Southern District of New York and the Northern District of Illinois. For the following reasons, this motion is denied as premature.

*Prior Proceedings*

Sometime prior to 1991, Hoffenberg and a number of corporate entities with which he was associated, including Towers Financial Corp. and others, came under investigation by the Securities & Exchange Commission ("SEC"). The SEC filed an action in this District against Hoffenberg and others in February 1993, and on February 17, 1993, Hoffenberg and certain other defendants agreed to a preliminary injunction (the "Consent Order") which, among other things, enjoined Hoffenberg and "each of his con-

trolled, related, or affiliated entities ... to hold and retain within their control, and otherwise prevent any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal of any funds, or other properties."

In 1993, the United States Attorney for the Southern District of New York began a criminal investigation against Hoffenberg and others for conspiracy to obstruct the SEC's investigation during 1991 and 1992, and for various other criminal violations of the securities laws.

In March 1993, Hoffenberg, through counsel, initiated a number of meetings which culminated in an oral understanding. Pursuant to that understanding, Hoffenberg agreed to talk to representatives of the United States Attorney's Offices for the Southern District of New York and the Northern District of Illinois, the FBI, and the SEC (collectively, the "Government"). In return, the Government agreed to grant Hoffenberg limited immunity for each of his proffers or debriefings.

On September 23, 1993, Hoffenberg and the Government entered into the Agreement, which provided that Hoffenberg would be charged with four felony counts in the Southern District Information: (i) conspiracy to violate 15 U.S.C. §§ 78j & 78ff by fraudulently selling securities in violation of 18 U.S.C. § 371; (ii) mail fraud in violation of 18 U.S.C. § 1341; (iii) conspiring to obstruct justice in violation of 18 U.S.C. § 371; and (iv) tax evasion in violation of 26 U.S.C. § 7201. It was further agreed that Hoffenberg would plead guilty to and be sentenced on an information filed in the Northern District of Illinois in this District, and that this information would charge Hoffenberg with one count of mail fraud in violation of 18 U.S.C. § 1341.

The Agreement states that:

Steven Hoffenberg shall truthfully disclose all information with respect to the activities of himself and others concerning all matters about which the [Government] inquire[s] of him, shall cooperate fully with the [Government], shall attend all meetings at which his presence is requested with respect to the matters about which the [Government] inquire[s] of him, and further, shall truthfully testify before the grand jury and/or at any trial or other court proceeding with respect to any matters about which the [Government] may request his testimony. Any assistance Steven Hoffenberg may provide to federal criminal investigators shall be pursuant to the specific instructions and control of the [Government]. This obligation of truthful disclosure includes an obligation upon Steven Hoffenberg to provide to the [Government], upon request, any document, record or other tangible evidence relating to matters about which the [Government] inquires of him.

With respect to sentencing, the Agreement provided, in relevant part, that:

[T]he [Government] will inform the sentencing judge and the Probation Department of: (i) this Agreement; (ii) the nature and extent of Steven Hoffenberg's activities with respect to this case; and (iii) the full nature and extent of Steven Hoffenberg's cooperation with the [Government] and the date when such cooperation commenced. In addition, if it is determined by the [Government] that Steven Hoffenberg has provided substantial assistance in an investigation or prosecution, and if Steven Hoffenberg has otherwise complied with the terms of this Agreement, the [Government] will file a motion, pursuant to Section 5K1.1 [the "5K Motion"] of the Sentencing Guidelines, advising the sentencing judge of all relevant facts pertaining to that determination and requesting the Court to sentence Steven Hoffenberg in light of the factors set forth in Section 5K1.1(a)(1)–(5).

### The Facts

Beginning in 1993, the SEC asserted that Hoffenberg was not fully cooperating or complying with the Consent Order in that he allegedly was concealing assets and his alleged interest in a company called Diversified Credit Corporation (DCC), and was also concealing his relationship to a collection company known as "Stratford."

Hoffenberg held a number of sessions with the Government before and after entering

into the Agreement, and followed the Government's instructions with respect to gathering evidence. The Government alleges, however, that Hoffenberg failed to disclose the existence and, later, the scope, of his involvement in DCC, and that it conducted an independent investigation which supported the allegations that Hoffenberg exercised control of DCC. According to the Government, prior to their taking the deposition of a confidential witness regarding their investigation of DCC, Hoffenberg prepared the witness to lie for the purpose of concealing Hoffenberg's interest in the company.

In January of 1994, the Government met with Hoffenberg to put him on notice of the ways in which the government believed he had violated the Agreement and to enable him or his counsel to respond. The Government informed Hoffenberg that it believed he had violated the Agreement by (i) misrepresenting his actual role and interest in DCC to avoid having to comply with the Consent Order; (ii) suborning perjury to conceal his role at DCC; and (iii) lying about his participation in Stratford. A second meeting between the Government and Hoffenberg was held in February 1994. The Government alleges that Hoffenberg did not adequately explain or refute their allegations that he had violated the Agreement.

On February 17, 1994, the Government advised Hoffenberg that the Agreement had been terminated and that he would be arrested. On April 20, 1994, an indictment was returned against Hoffenberg in the Southern District of New York charging him, in addition to securities and mail fraud and obstruction of justice charges related to the SEC investigation of Towers, with a separate obstruction count relating to alleged circumvention of the Consent Order (the "Indictment").

Argument was heard on the present motion to enforce the Agreement on June 29, 1994, and further submissions were received until July 8, 1994, at which time this motion was considered fully submitted.

### The Motion to Compel a 5K Letter is Premature

Despite the Indictment, the Government asserted upon argument that it is willing to allow Hoffenberg to plead to the same charges provided for in the Agreement, but that it will not make a 5K Motion on his behalf. (*See also* Gov.Mem. at 18.) In other words, a motion to enforce the Agreement with respect to the charges brought could be granted in the absence of opposition. The 5K Motion, therefore, is the sole outstanding issue. In the event of a plea, Hoffenberg can challenge the Government's good faith in refusing to make a 5K Motion and the Government's determination that he violated the Agreement.

In *United States v. Leonard,* 817 F.Supp. 286 (E.D.N.Y.1992), the defendant made a pretrial motion to enforce a plea agreement which indicated, among other things, that he would plead guilty to the charge in the indictment, and that the Government would make a 5K Motion on his behalf. Apparently becoming dissatisfied with the defendant's adherence to the plea agreement, the Government indicated that it did not intend to make a 5K Motion, although it intended no alteration of the charges against the defendant.

The court found that, in light of the fact that the plea agreement contained the same charge as in the indictment, the only open question was the government's obligation to make a 5K Motion. The court further found that the defendant could move under the procedures outlined in *United States v. Knights,* 968 F.2d 1483 (2d Cir.1992) for a hearing to address the government's alleged bad faith in failing to make a 5K Motion prior to the imposition of sentence, but that until that time a motion to enforce the agreement was premature. *Leonard,* 817 F.Supp. at 304–05.

In *United States v. Denich,* 91 Cr. 1053, 1992 WL 96687, at *5, 1992 U.S.Dist. LEXIS 5960, at *13 (S.D.N.Y. April 29, 1992), the defendant moved, prior to trial, for an order compelling the Government to make a 5K Motion on his behalf, claiming that, although there was no plea agreement in effect, he had afforded the Government substantial assistance. This Court stated that the defendant had "neither pled guilty nor been found guilty. He moves now to compel the government to ask for a reduction in his sentence,

but he has not even been tried. [The defendant's] motion is therefore premature and must be denied on that ground alone."

Likewise, in *United States v. Ghent,* 29 F.3d 416 (8th Cir.1994), the defendant, after sentencing, claimed that the Government had breached a plea agreement in which it had promised either to make a 5K Motion or to move for a reduction in the defendant's sentence pursuant to Rule 35, Fed.R.Cr.P.[1] Since the time for a Rule 35 motion had not yet expired, the court found that the defendant's claim was premature. *Ghent,* 29 F.3d at ——.

At this juncture, it is unknown whether Hoffenberg will face sentencing in this Court, and it is also unknown whether circumstances may arise to alter the Government's present position with regard to a 5K Motion on Hoffenberg's behalf. Contrariwise, were the Agreement to be specifically enforced at this time, it is unknown what actions Hoffenberg might take in the future that could again influence the Government to withhold a 5K Motion. To decide this issue at the present time would be tantamount to issuing "an advisory opinion, 'a practice greatly disfavored.'" *United States v. Badaracco,* 954 F.2d 928, 943 (3d Cir.1992) (declining to address claim that district court would retaliate against defendant for appeal prior any action being taken by the district court).

### Conclusion

For the reasons discussed above, Hoffenberg's motion for specific performance of the Agreement is denied as premature.

It is so ordered.

---

1. Rule 35(b) provides, in relevant part, that:
   The court, on motion of the Government made within one year after the imposition of the sentence, may reduce a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense....