**UNITED STATES of America,**

v.

**Ray A. PROCTOR, Defendant.**

**No. Cr. 94–3 (TFH).**

United States District Court, District of Columbia.

July 2, 1996.

Michael Volkov, Asst. U.S. Atty., Washington, DC, for U.S.

Leonard E. Birdsong, Chavers & Birdsong, Washington, DC, for Ray A. Proctor.

*MEMORANDUM OPINION*

THOMAS F. HOGAN, District Judge.

Pending before the Court is defendant Ray Proctor's "motion to compel [sic] government to maintain its benefit of the bargain with respect to defendant's plea agreement and request for evidentiary hearing." The question properly framed is whether the

existence of a plea agreement containing a provision placing with the prosecutor sole discretion in determining whether or not the defendant has offered substantial assistance gives the defendant the right to challenge on bad faith grounds a prosecutor's adverse decision. On April 26, 1996, the Court conducted a hearing on defendant's motion and eventually held that the defendant was not entitled to an evidentiary hearing because he had failed to make a threshold showing of bad faith or unconstitutional motive. Consistent with its previously stated opinion, the Court will deny the defendant's motion without proceeding with an evidentiary hearing.

## BACKGROUND

On November 3, 1994, defendant was charged in a superseding indictment with conspiracy to distribute and possession with intent to distribute over fifty grams or more of cocaine base, over five hundred grams or more of cocaine and over one hundred grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846. In November 1994, the defendant and the government entered into negotiations regarding a possible plea agreement and discussions regarding any information the defendant might be able to provide regarding drug trafficking and acts of violence. Eventually the defendant agreed to provide information regarding drugs, murders, and shootings, but made clear that he would not provide information regarding friends from his Park Morton neighborhood. With this understanding, on or about December 8, 1994, the defendant entered into a plea agreement with the government.

Naturally, analysis of whether the terms of the plea agreement have been met begins with a review of that agreement's terms. First, the agreement specifies that the defendant agrees to cooperate in whatever form the United States Attorney's Office deems appropriate. Agreement at ¶ 3(a). The "whatever form" paragraph is subsequently defined to include answering questions, giving sworn written statements, giving testimony, and participating in covert law enforcement activities. Moreover, the agreement makes clear in ¶ 3(c) that the defendant shall testify fully and truthfully before any grand jury in the District of Columbia and elsewhere and at all trials of cases or other court proceedings and elsewhere at which his testimony may be deemed relevant by the government. Thus, the plea agreement expressly required that the defendant be prepared to testify in open court. The government concedes that the defendant expressed concern at the time of the agreement about testifying, and hoped that testimony would not be required. However, the government maintains that at no time in negotiations with the defendant did any representative of the government tell the defendant he would not be required to testify. And in fact, the agreement as signed expressly requires the defendant to do just that.

In return, the government made several commitments. In addition to dismissing several counts from the defendant's indictment, the prosecutor promised that in return for the defendant's "specific performance of all his obligations under the agreement," it would inform the Departure Guideline Committee of the United States Attorney's Office of the nature and extent of the defendant's cooperation. Moreover, the agreement provided that if the Departure Committee, after an evaluation of the defendant's cooperation, determined that the defendant had provided substantial assistance, then the prosecutor would file a substantial departure motion pursuant to § 3553(e), and 5K1.1. Most importantly for the Court's purposes, the agreement stated that:

> your client understands that the determination of whether he has provided substantial assistance is within the sole discretion of the United States Attorney for the District of Columbia and is not reviewable by the Court. Nor shall the failure of the United States Attorney's Office for the District of Columbia to file a substantial assistance departure motion be grounds for your client to move to withdraw his plea of guilty in this case.

Agreement at ¶ 9(d).

The contract the defendant signed indicated that he had read the plea, had discussed it with his attorney, understood the agreement, and that he agreed without reservation, vol-

untarily, and of his free will. Moreover, the agreement reaffirmed that there were absolutely no promises, agreements, understandings, or conditions that had been made or entered into in connection with the decision to plead guilty. In particular, the agreement stated that, "there are no other agreements, promises, understandings, or undertakings between your client and the government, and your client understands that there can be no valid addition or alteration to this agreement unless the modification is made on the record in open court or made in a writing signed by all the parties." Agreement at ¶ 21. Furthermore, the agreement states: "this letter sets forth the entire understanding between the parties and constitutes the complete plea agreement. Nothing in this agreement shall be construed as enlarging or broadening the government's obligations. This agreement supersedes all prior understandings, promises, agreements, or conditions, if any, between the office and your client." Agreement at ¶ 19.

On December 12, 1994, the defendant appeared in court so that his plea could be accepted. The Court, pursuant to Rule 11 of the Federal Rules of Criminal Procedure engaged the defendant in a thorough discussion of the terms of his plea. At no time did the defendant express concern over the terms contained therein, including either the requirement that he testify or that the government retained "sole discretion" to determine whether he had provided substantial assistance. The Court subsequently accepted the defendant's plea.

Following the plea, the defendant began having regular meetings with the government. These meetings generally included the defendant, defense counsel, the AUSA, and FBI Agent David Larson. Initially, the discussions appear to have focused on drug trafficking. The defendant admitted receiving drugs from one individual whom the FBI had already taped discussing the subject with the defendant. The defendant also identified a New York supplier; however, that individual had already died. Eventually the subject of the meetings turned to the defendant's knowledge regarding several homicides. These meetings were also attended by a Met-ropolitan Police Department homicide detective. According to the government, these meetings abruptly ended when the government determined that the defendant was not being wholly honest or forthcoming about his knowledge of the murders.

Sometime during this period, two individuals—Dexter Blackstock and Terry Barker—were arrested and charged with a narcotics conspiracy in the Eastern District of Virginia. The government maintains that they had information that these two individuals had long supplied the defendant with drugs, the defendant knew both individuals, and that he had drug dealings with both. The government asked the defendant to testify before the grand jury regarding the two individuals. Not only did the defendant refuse, but he denied having any information regarding them.

Soon after, counsel for the defendant contacted the government to express defendant's concern about his continued cooperation. Defendant's counsel allegedly represented that the defendant believed that the FBI had leaked information concerning the defendant's attempts to cooperate. Defendant's counsel subsequently contacted the AUSA and informed him that the defendant was willing to cooperate but would not testify, and inquired if under such circumstances it was still possible to get a 5K1.1 departure for substantial assistance. The AUSA told the defendant he believed that it was possible, but stated that he would need to confirm this with the Departure Committee of the U.S. Attorney's Office. After speaking with a representative of the Departure Committee, the AUSA informed the defendant that he could still theoretically qualify for a 5K1.1 letter without testifying as long as the information provided significant assistance to the government.

Subsequently, the defendant agreed to provide information regarding several homicides of which he was aware. However, none of the information the defendant eventually provided constituted information the government did not already possess. The AUSA informed the defendant through his counsel that the information had been of little use. At this stage, the defendant raised anew

concerns about leaks and stated that he refused to meet with law enforcement officials again.

Some time soon after, defendant's counsel requested that the AUSA go forward and make application for a 5K1.1 departure to the Departure Committee. The AUSA prepared the application and then called the defendant's counsel to review its contents so that there would be no disagreement about the extent of the defendant's cooperation. Among the information included in the application was that: (1) the defendant had admitted involvement with one supplier; (2) the defendant gave information regarding a deceased supplier; (3) the defendant claimed minimal involvement with Blackstock and Barker; (4) the defendant refused to testify before the grand jury regarding Blackstock and Barker; (5) the information the defendant provided regarding Blackstock and Barker later proved to be false; and (6) the information the defendant provided regarding homicides was already known to investigators. Defendant's counsel, with some minor revisions, agreed that the information contained in the application was accurate. The Departure Committee reviewed the application and denied the request for the 5K1.1 motion. The AUSA informed the defendant of the Departure Committee's decision whereupon the defendant told the AUSA that he wanted to continue to try to earn a 5K1.1 motion. Specifically, the defendant agreed to try to assist the government in purchasing a large quantity of drugs from a New York supplier. Shortly after these discussions began, the defendant informed the AUSA that he was unwilling to work on the case.

On March 11, 1996, the defendant filed a motion asking the Court to compel the government to file a 5K1.1 motion for departure. The motion is based on the defendant's claim that he has satisfied the terms of the plea bargain and that the government kept changing the terms of the agreement. The government has opposed the motion.

## DISCUSSION

### A. Legal Standards

Under 18 U.S.C. § 3553(e), a district court is permitted "[u]pon motion of the government," to impose a sentence below the statutory minimum to reflect a defendant's "substantial assistance in the investigation or prosecution of another person who has committed an offense." Likewise, the sentencing guidelines provide that district courts may go below the minimum required under the guidelines if the government submits a "substantial assistance" motion. United States Sentencing Commission Guidelines Manual (Nov.1995) ("USSG") § 5K1.1. This case involves a challenge to the government's decision not to file such a motion, which the government conditionally agreed to do pursuant to a written plea agreement.

Analysis of the question begins with *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), where the Supreme Court addressed the government's duty to comply with its promises and obligations made as part of a written plea agreement. *Santobello* involved the promise of a prosecutor made in exchange for a plea to make no recommendation as to a particular sentence. *Id.* at 258, 92 S.Ct. at 497. At sentencing, the prosecutor reneged on the promise and recommended that the defendant receive the maximum sentence available. *Id.* The Court found that the prosecutor's actions constituted a breach of the agreement. *Id.* at 262, 92 S.Ct. at 499. The Court stated that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.*

Eleven years later, the Supreme Court had an opportunity to consider under what circumstances a defendant could challenge a prosecutor's refusal to file a § 5K1.1 motion predicated upon a defendant's substantial assistance. In *Wade v. United States,* 504 U.S. 181, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), a defendant who had pled guilty to various drug charges without the benefit of a plea agreement faced a 10–year mandatory minimum sentence. Nonetheless, at sentencing the defendant urged the court to depart downward in recognition of the assistance that he had provided. The district court as

well as the Fourth Circuit rejected the defendant's argument principally on the basis that the government had failed to file a 5K1.1 motion. The court of appeals also rejected the suggestion that the district court was authorized to explore the motivations of the government in not filing a substantial assistance motion. 504 U.S. at 184, 112 S.Ct. at 1843. In addressing the issue the Supreme Court stated that the district court's authority to depart is conditioned on the government's filing a motion, and that such a condition "gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted." 504 U.S. at 184, 112 S.Ct. at 1843. However, the Supreme Court ultimately concluded that "federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive." *Id.* at 184–87, 112 S.Ct. at 1843–44. The Court noted that even a claim that the defendant provided substantial assistance would not entitle the defendant to a remedy, discovery or an evidentiary hearing. *Id.* at 185–87, 112 S.Ct. at 1844. Rather, the defendant is not entitled to an evidentiary hearing unless he makes a "substantial threshold showing" of unconstitutional motive. *Id.*

■ In a series of cases, this circuit has now addressed under what circumstances a defendant who is party to a plea agreement can challenge a prosecutor's decision not to file a substantial assistance motion. In *United States v. Doe,* 934 F.2d 353 (D.C.Cir.), *cert. denied,* 502 U.S. 896, 112 S.Ct. 268, 116 L.Ed.2d 221 (1991), a case which did not involve a plea agreement, the court of appeals reversed a district court's decision to apply an arbitrary and capricious review standard to a government's failure to file a 5K1.1 motion. *Id.* at 361. However, the court made clear that some limited form of review would be available applying the same standards currently employed to review other matters committed to prosecutorial discretion, including bad faith. *Id.* Subsequently, in *United States v. Sparks,* 20 F.3d 476 (D.C.Cir.1994), the court characterized the government's obligation to file a substantial assistance motion to be a contingent one. *Id.* at 478 (the language of that agreement read: "[i]f the Departure Guideline Committee . . . determines that [defendant] has provided substantial assistance . . ., then the Office will file a motion pursuant to 18 U.S.C. § 3553(e), and 5K1.1"). As the court noted "[i]f the contingency is not fulfilled, the departure motion is not filed. Period." *Id.* Interestingly, in *Sparks* the government apparently conceded that based on the court's previous holding in *Doe,* 934 F.2d 353, its refusal to file a substantial assistance motion was "in principle" reviewable for bad faith even in the absence of an agreement.[1] 20 F.3d at 479.

However, not until *United States v. Jones,* 58 F.3d 688 (D.C.Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 430, 133 L.Ed.2d 346 (1995), did this circuit explicitly provide a criminal defendant with the right to challenge a prosecutor's failure to file a 5K1.1 motion in the face of an agreement providing the prosecutor with sole discretion for deciding whether such a motion would be filed. In *Jones,* the defendant entered into an agreement with the government in which he agreed to plead guilty to two of the charges pending against him and to cooperate with the government in any pending investigations. In return, the government agreed that, if it determined that the defendant had provided substantial assistance, it would file a motion pursuant to § 5K1.1. The agreement further stated that the United States Attorney's Office "retains its discretion concerning whether to file a motion for a reduction in the sentence. . . ." *Id.* at 690. In other words, the government

---

1. The Supreme Court's holding in *Wade* which came after *Doe* most certainly places in doubt the viability of the reasoning of *Doe.* As *Wade* made clear, where a defendant such as was the case in *Doe* does not have a formal agreement, review is limited to unconstitutional motive. 504 U.S. at 184–87, 112 S.Ct. at 1843–44. Such an interpretation is consistent with this circuit's later statements in *Jones* which suggest its distinction with

*Wade* is the presence of an agreement. *See Jones,* 58 F.3d at 692 ("in the absence of any contractual arrangement, the Government's decision not to file a section 5K1.1 motion, like any other prosecutorial decision, is subject to constitutional limitations. . . . The plea agreement, however, provides additional protection. . . ." (citations omitted)).

had a "contingent obligation" to file a substantial assistance motion. Despite the defendant's apparent full cooperation the Departure Committee found that no downward departure motion was warranted because the defendant had not provided substantial assistance. At sentencing, Jones moved to compel the government to file such a motion on the ground that he had fully cooperated—a fact that the government did not dispute. Instead, because the government argued that because full cooperation was not necessarily the equivalent of substantial assistance, the contingency was not met and thus it had no obligation to file the motion. *Id.* The court agreed, finding that the agreement did not obligate the government to make a finding of substantial assistance if the defendant fully cooperates. *Id.* at 691.

However, at oral argument the government asserted that, in light of *Wade*, its decision not to file a departure motion could only be reviewed for constitutional infirmities. Applying contract principles, the court found that a plea agreement provides additional protection for a defendant above and beyond that of the Constitution. 58 F.3d at 692. The court noted that, like all contracts, the plea agreement includes an implied obligation of good faith and fair dealing. *Id.* Accordingly, the court found that the agreement obligated the prosecutor to present to the Departure Committee accurate information as to the extent and nature of a defendant's cooperation and that if the Committee upon consideration of that assistance believed it to be substantial, to so find. *Id.* In order to assist trial courts as well as reviewing courts in assessing the good faith of the prosecutor as well as the Departure Committee the court went on to "suggest" that in the future they summarize the information sent to the Departure Committee, together with

any explanation of the Departure Committee for finding the defendant's assistance to be insubstantial. *Id.*

Not surprisingly the various courts that have considered this question have divided over the issue. Following the lead of the Supreme Court in *Santobello,* most have applied a contract analysis. There are of course those courts that agree in principle with *Jones* that in the presence of a plea agreement a bad faith review is possible. *See United States v. Knights,* 968 F.2d 1483, 1486 (2d Cir.1992); *United States v. Robinson,* 978 F.2d 1554, 1569 (10th Cir.1992), *cert. denied,* 507 U.S. 1034, 113 S.Ct. 1855, 123 L.Ed.2d 478 (1993). On the other hand, there are those courts that maintain that, subsequent to *Wade,* no such review is required. *See United States v. Wallace,* 22 F.3d 84, 87 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 281, 130 L.Ed.2d 198 (1994) [2] (government retainment of sole discretion gave rise to no enforceable promise); *United States v. Watson,* 988 F.2d 544, 552–553 (5th Cir.1993), *cert. denied,* 510 U.S. 1048, 114 S.Ct. 698, 126 L.Ed.2d 665 (1994) (harmonizing *Wade* and *Santobello* in the manner suggested by Seventh Circuit; power to make or withhold § 5K1.1 motion is form of prosecutorial discretion not reviewable for arbitrariness); *United States v. Burrell,* 963 F.2d 976, 985 (7th Cir.), *cert. denied,* 506 U.S. 928, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992) (prosecutor's refusal to request a downward departure "is not reviewable for arbitrariness or bad faith"); *United States v. Romsey,* 975 F.2d 556, 558 (8th Cir.1992) (carefully worded plea agreement preserved the government's discretion not to file a substantial assistance motion, review limited to allegation of unconstitutional motive) [3]; *United States v. Forney,* 9 F.3d 1492, 1502 n. 5 (11th Cir.1993) (consideration of government's re-

---

**2.** Notably, the Fourth Circuit was the originating court for the Supreme Court's decision in *Wade,* and it draws a dramatically different conclusion about the impact of *Wade* than several circuits—including ours. *See Wallace,* 22 F.3d at 87.

**3.** There is some suggestion in Eighth Circuit case law of the existence of a bad faith review of a prosecutor's decision not to file a 5K1.1 motion. For example, in *United States v. Kelly,* 18 F.3d 612 (8th Cir.1994), a case purportedly applying the holding of *Romsey,* the court held that it

could review a failure to file a motion on the basis of bad faith. *Id.* at 617–618. Such a reservation is not found in *Romsey* and this court is unclear if the *Kelly* court intended its holding to apply to those limited situations where the promise to make a downward departure motion is linked to certain conduct on the part of the defendant rather than a subjective evaluation of assistance. This distinction was recognized as significant by the Court in *Burrell,* 963 F.2d 976.

fusal to file a 5K1.1 motion limited to those cases in which a constitutionally impermissible motive has been alleged).

*Wade* did not involve a plea agreement—a factor the Court itself recognized could be significant when it noted that the petitioner had not suggested that the condition requiring the filing of a motion by the government had not been "superseded in this case by any agreement on the government's behalf to file a substantial assistance motion, *cf. Santobello v. New York,* 404 U.S. 257, 262–263, 92 S.Ct. 495, 498–499, 30 L.Ed.2d 427 (1971); *United States v. Conner,* 930 F.2d 1073, 1075–1077 (4th Cir.), *cert. denied,* 502 U.S. [958], 112 S.Ct. 420, 116 L.Ed.2d 440 (1991)." 504 U.S. at 184, 112 S.Ct. at 1843. However, many of the courts that have joined this circuit in permitting bad faith challenges have done so on the strength of this language from *Wade.* Because *Wade* implicitly endorsed the reasoning of the Fourth Circuit in *Conner*— which unlike *Santobello* involved both a plea agreement *and* a promise to file a 5K1.1 motion—and so many courts have seized upon the language in *Wade* to buttress their bad faith analysis, it is helpful to examine the scope of *Conner.*

In *Conner* the defendant pled guilty to one of two counts under which he had been indicted and promised to provide truthful information about any and all criminal activity, and in return the United States promised it would recommend a sentence below the guidelines and statutory minimum. 930 F.2d at 1074. After concluding that Conner had been less than truthful, the government refused to file the motion. The defendant argued that, because he had disclosed all that he knew, the government was in breach of its agreement. Treating the government obligation as a promise to make a 5K1.1 motion, the Fourth Circuit held: "once the government uses its [ ] 5K1.1 discretion as a bargaining chip in the plea negotiation process, that discretion is circumscribed by the terms of the agreement." *Id.* at 1075. The court went on to note that the role of the trial court is to determine if the government promised to make a motion in return for substantial assistance, and if so, whether the defendant had satisfied his obligations. *Id.*

On its surface, the Supreme Court's reliance on *Conner* lends strength to the argument that a court can review the government's failure to file a 5K1.1 motion for more than constitutional problems. However, the Fourth Circuit has subsequently addressed the scope of *Conner* in *Wallace,* 22 F.3d 84, where it distinguished *Conner* as a case in which the government was subject to a binding obligation to make a departure motion. The *Wallace* court stated:

> [t]he *Conner* plea agreement in critical part provided that "[s]hould [defendant] provide substantial assistance [ ], then the United States will recommend ...," [ ]; the agreement in the instant case imposed no such binding obligation, providing only that "the United States reserves its option to seek any departure ... if in its sole discretion, the United States determines that the defendant has provided substantial assistance and that such assistance has been completed." [ ] *The Conner agreement gave rise to an enforceable promise as a matter of simple contract law; the agreement in the instant case gave rise to no enforceable promise, explicitly reserving discretion rather than promising anything.*

22 F.3d at 87 (emphasis added) (citations omitted). The court concluded that because no enforceable promise existed, the government's decision was purely discretionary subject to review only for unconstitutional motive. *Id.* Seemingly the reach of the Supreme Court's holding in *Wade* can be no broader, without expressly stating, than the law the Court is purportedly adopting. Moreover, the contrast between *Conner* and *Wallace* is illustrative of a court drawing a distinction between how it treats various plea agreements. *See also Burrell,* 963 F.2d at 985 (discussion of prosecutor's actions that were and were not reviewable under a bad faith standard).

Although cognizant that *Jones* is presently the law of the circuit, the Court is nonetheless deeply troubled by the implications of *Jones* and its progeny. Given the universally held belief that the defendant in *Jones* had fully cooperated, the court was understandably distressed by the fact that the defendant

had done all that he could and yet under the plea agreement was still not entitled to a 5K1.1 motion. Perhaps it was this circumstance that led the court to reject the government's suggestion regarding the import of *Wade. Id.* at 692; *see Wade,* 504 U.S. at 183–84, 112 S.Ct. at 1842. Putting it mildly, placing a district court in the position of reviewing a prosecutor's subjective discretionary decision is rife with problems. The Court believes that the approach of the Fourth Circuit and others—drawing distinctions depending on the language of a particular plea agreement—is eminently more sensible and workable. In this Court's view, any attempt to wade into this pool of prosecutorial discretion will inevitably lead a court to being swallowed under by the tide. The Court's problems with the current state of the law are threefold.

First, as a matter of simple contract law the agreement entered into by the defendant placed in the sole discretion of the government the decision whether or not to file a departure motion. Under the present law of this circuit this defendant is entitled to come to court and seek relief for what he deems to be a "breach" of that contract. In contrast, the Court finds the plea agreement at issue more akin to the hypothetical familiar to all first year law students studying contracts. In the scenario a promisor agrees to pay for a painting only if, in his opinion, the painting is worthy. The conclusion of the hypothetical is that our promisor has not made an enforceable promise. Likewise, in the case of a plea agreement where the government retains the sole right to determine whether it believes the assistance offered by a particular defendant is worthy, such a "contract" should also be treated as unenforceable. Arguably, the promise made to the defendant in the instant case constituted no enforceable promise on the part of the government. Although the Court is not prepared to suggest that these types of plea agreements are illusory, it is hard pressed to find some obligation on the part of the government that can reasonably be enforced. According to the law of this circuit the parties to this type of agreement do not have the right to have the literal terms of their agreement enforced. Allowing review of the bad faith of the government in choosing not to file a departure motion in the face of contract terms precluding such a review is clearly at odds with the intent of the parties and renders the language granting the government sole discretion to decide such matters meaningless.

This leads the Court to its second area of concern—the lack of identifiable review standards. It is worth noting that there are two underlying areas of inquiry that the prosecutor is required to resolve which could end up the subject of a court's review—full cooperation and substantial assistance. For as *Jones* instructs, a defendant's full cooperation does not necessarily support a finding of substantial assistance. Moreover, this leaves unaddressed the distinct discretionary decision of the government of whether or not to file a departure motion. It is against this backdrop that a court is required to begin its review of the prosecutor's actions. One possibility for the Court would be to evaluate the good or bad faith of a prosecutor regarding the decision not to file a departure motion. However, this would appear to run afoul of contractual language giving the government sole discretion to make such a decision. On the other hand, the court could review the prosecutor's subjective decision that substantial assistance was or was not provided. This appears to be a natural area for a court's inquiry as substantial assistance is generally considered a prerequisite to a departure motion. However, even assuming that the recurrent question of where the discretion should lie could be put aside, how would the court objectively arrive at a determination of whether or not substantial assistance had been offered when the government has subjectively determined that it has not? As the saying goes, beauty is in the eye of the beholder. This of course leaves undetermined still the fundamental question of what standard a Court should apply to this review. Regardless of the path the Court treads it ends up effectively a review tribunal of the Departure Committee by making determinations regarding the validity of the Departure Committee's conclusions. In this Court's view this is an untenable situation.

Third, the Court finds puzzling the precatory suggestion of *Jones* that the government

should be prepared to submit the information supplied to the Departure Committee as well as an explanation from the Committee as to why the assistance was not substantial. The Court is at a loss as to how to manage the "mini-trials" to which the court of appeals' suggestion would inevitably lead.[4] A simple allegation of bad faith (assuming the defendant met some threshold showing of merit which entitled him to a hearing) would permit a defendant to demand from the government all of its plea negotiation notes, while at the same time putting in evidence that the defendant's recollection of discussions and understanding was different than that of the government. At some point it appears that the trial court would be required to listen to witnesses and eventually make credibility determinations regarding the individuals involved—including members of the Departure Committee and counsel. The problem presented by *Jones* is the slippery slope that such intense scrutiny could lead to. There may be instances where the government acts in bad faith in denying the defendant a § 5K1.1 motion for example, where the defendant has indeed provided substantial assistance but the government fails to acknowledge such cooperation. But who is to make that call—and by what standard?

## B.  Application To The Present Case

However, because *Jones* is the law of this circuit, this Court is bound to apply it. Ap-

plying contract principles, as *Jones* suggests, the Court is constrained by the actual contract signed by the parties irrespective of any side agreements the defendant claims existed. Putting aside the previously discussed language of the agreement which appears to speak for itself, at the plea the Court engaged the defendant in a thorough plea colloquy in which it reviewed the salient points of the agreement with the defendant. First, the Court reviewed the respective obligations of the parties. The Court also reviewed whether there were any other promises except those contained in the agreement, and the defendant indicated that there were not. Review of the agreement revealed no suggestion of any implicit understanding or side deal that there would be no requirement of testimony in this case. The defendant now complains that he provided all of the information that he could and that the government wanted him to do more than he could. According to the defendant, the government wanted him to testify when he had an understanding that he didn't need to testify in order to fully cooperate.[5] The agreement specified that the defendant's obligation included cooperation in whatever manner the government saw fit—including testifying. However, the question of whether the defendant's failure to testify has absolved the government from its concurrent obligations is not one this Court need resolve.[6] Although

4. The Second Circuit has outlined procedures for determining when a hearing based on a challenge based on a prosecutor's bad faith is warranted. In *Knights*, 968 F.2d 1483, the court held that:

> when a cooperation agreement allows for a substantial-assistance motion contingent on the government's subjective evaluation of a defendant's efforts to cooperate, the district court may review only to determine whether the prosecution based its decision on impermissible considerations such as race or religion, or 'whether the prosecutor has made its determination in good faith.'

*Id.* at 1487 (quoting *United States v. Rexach*, 896 F.2d 710, 714 (2d Cir.), *cert. denied*, 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990)). The court went on to outline the procedures for determining when a hearing on bad faith is warranted. "When a defendant claims that the government has acted in bad faith in refusing to move for a downward departure, the government may rebut this allegation by explaining its reasons for refusing to depart. The defendant must

then make a showing of bad faith 'to trigger some form of hearing on that issue.' " 968 F.2d at 1487 (quoting *United States v. Khan*, 920 F.2d 1100, 1106 (2d Cir.1990), *cert. denied*, 499 U.S. 969, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991)). *See also United States v. Leonard*, 50 F.3d 1152, 1157 (2d Cir.1995) (outlining the extent of the required hearing). No such standards were enunciated in *Jones*. '

5. Implicit in the defendant's argument is the suggestion that the plea agreement was fraudulent when made based on the existence of certain side agreements. Notwithstanding the language in the agreement that deals precisely with this subject, the defendant has not formally sought withdrawal of the plea agreement.

6. It is clear to the Court that at some time during the purported cooperation period the defendant made a decision not to testify and inquired whether he could still obtain a substantial departure. There is no question that the government

as a practical matter the defendant cannot claim to have met the objective terms of the agreement in the instant case when it is unquestionable that the defendant opted out of one of the terms—testifying. Whether an individual fully cooperates or provides substantial assistance is a nebulous concept rendered more so in the instant case by the actions of the defendant.

■ Applying the aforementioned standards, there is little question that the government was not required to file a substantial assistance motion. Dealing first with *Wade*, there has been no serious suggestion on the part of the defendant that the prosecutor's actions were in any way driven by an unconstitutional motive. In response to a cue from the Court, defendant's counsel raised due process concerns. But as *Wade* makes clear, the constitutional infirmities it contemplated went to improper motive such as race or religion. 504 U.S. at 185–86, 112 S.Ct. at 1844. The defendant, rather than making the requisite threshold showing which would entitle him to an evidentiary hearing, has made no showing of unconstitutional motive.

As for bad faith, the defendant has likewise failed to make the requisite threshold showing which would entitle him to a hearing. First, the defendant's agreement, like the one in *Jones*, imposed upon the government a contingent obligation predicated on the finding of substantial assistance. Like *Jones*, when the Departure Committee concluded that the defendant had failed to provide substantial assistance, the contingent obligation was not triggered. Second, this case differs from *Jones* in several significant respects which remove it from that class of cases which appear to have reached an unfair result. The relevant language of the agreements is different. In *Jones* the language of the agreement provided that the government "retains its discretion concerning whether to file a motion for a reduction in his sentence...." 58 F.3d at 690. In the present case the language stated: "your client understands that the determination of whether he

has provided substantial assistance is within the sole discretion of the United States Attorney for the District of Columbia and is not reviewable by the Court." In the Court's view, this language is sufficiently different to require a different outcome, although in light of the sweeping pronouncement in *Jones* the Court is unclear if it is a difference that the court of appeals would treat as significant.

Perhaps the most significant difference is that unlike the case in *Jones*, there is no suggestion that this defendant complied with the terms of the agreement. In fact, the overwhelming evidence before the Court is that the defendant did not cooperate fully. In this case the defendant gave the government limited information, information of no value, and inaccurate and incomplete information regarding Mr. Blackstock's and Mr. Barker's activities. *Jones* involved the difficult situation of a defendant fully satisfying the technical requirements of the agreement, i.e., full cooperation, without satisfying the subjective element of giving substantial assistance. In the present case there is no suggestion that the defendant has complied with either the objective or subjective obligations of the agreement. In addition, there is no suggestion in this case that the government submitted inaccurate information to the Departure Committee. Rather, the government's action of reviewing thoroughly the information in the application with defendant's counsel is to be commended.

The defendant has presented no evidence of bad faith aside from his claim of certain side agreements with the government. However, reliance on understandings outside the terms of the agreement takes the defendant farther and farther away from the basis of his bad faith claim—the contract itself. A predicate to arguing that the government acted in bad faith in complying with the terms of the agreement must be establishing that the government had an obligation in the first place. The government's obligation here is a contingent one—contingent on the defendant's meeting his obligations, and in

made the appropriate inquiries and informed the defendant that a departure motion was still theo-

retically possible.

the present case there is little evidence that the defendant did this.

## CONCLUSION

In this Court's view the defendant seeks to gain the benefit of his bargain without suffering the burdens of that bargain. Unfortunately for the defendant, it takes more than a mere promise to cooperate to garner the benefits of cooperation. Accordingly, the Court will not hold an evidentiary hearing, will not require the government to submit its notes for review by the Court, and denies the defendant's motion to compel.