**UNITED STATES of America**

v.

**Edwin RAMOS.**

**Civil Action No. 96–5046.**
**Criminal Action No. 90–00431–06.**

United States District Court,
E.D. Pennsylvania.

July 16, 1997.

Cheryl Sturm, West Chester, PA, for Petitioner.

Robert A. Zauzmer, Kristin Hayes, Philadelphia, PA, for Respondent.

### MEMORANDUM

DuBOIS, District Judge.

Currently before the Court is the Motion of Edwin Ramos under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. For the reasons set forth herein, Petitioner's request for an evidentiary hearing will be granted for the limited purpose of further developing the factual record with respect to two issues: (1) petitioner's claim that his counsel was ineffective for failing to appeal his sentence and (2) petitioner's claim that the Government breached the September 11, 1990 Plea Agreement when it reiterated a stipulation relating to sentencing contained in that Plea Agreement at the March 21, 1991 Change of Plea Hearing but then argued to the contrary at sentencing. Excepting only these two issues, on which the Court will rule after the hearing, Petitioner's request for an evidentiary hearing will be denied. Moreover, all claims, excepting those two relating to the two issues to be addressed at the hearing, will be dismissed or denied.

### I. Background

Edwin Ramos pled guilty to conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846. He and his co-conspirators, identified as the Ramos Cocaine organization ("RCO"), distributed massive amounts of cocaine and crack cocaine on the 1700 block of Mt. Vernon Street in Philadelphia, Pennsylvania from early 1987 to late 1990. Although the plea to that charge was not presented to the Court until a change of plea hearing on March 21, 1991, the Plea Agreement was signed by petitioner, his attorney and the attorneys for the Government on September 11, 1990. In that Agreement petitioner also agreed to plead guilty to certain counts charged in a separate indictment that was pending before Judge Waldman.[1]

Petitioner was scheduled to plead guilty in both matters on November 30, 1990. Petitioner did plead guilty on the morning of November 30, 1990 in the case before Judge Waldman. However, immediately prior to the scheduled afternoon change of plea hearing in this Court, the Government received a telephone call corroborating the accuracy of previously learned information that petition-

---

1. The separate indictment filed in Criminal No. 90–00201–04 charged petitioner with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), and distribution of cocaine within 1,000 feet of a school in violation of 21 U.S.C. § 845(a). Petitioner pled guilty to the latter two offenses.

er had violated the conditions of his bail by obstructing justice. *See* Nov. 30, 1991, Tr. at 6, 11. After that information was proffered to the Court by the Government, the change of plea hearing in this Court was continued and petitioner's bail was revoked pending a hearing. By Order dated December 13, 1990, the Order of September 19, 1990 authorizing petitioner's pre-trial release was revoked. Petitioner's Motion for Reconsideration was denied after a hearing on January 28, 1991.

Petitioner was sentenced on January 22, 1993. His base offense level for distribution of in excess of fifteen (15) kilograms of crack cocaine under § 2D1.1(a)(3) was 42; pursuant to § 2D1.2(a)(1), two levels were added because all of the distribution occurred within 1,000 feet of a school. Additionally, the offense level was increased two levels for obstruction of justice under § 3C1.1. Petitioner's total offense level was thus 46. Petitioner had six (6) criminal history points, placing him in Criminal History Category III. The Guideline sentence for someone with an offense level of 46 in Criminal History Category III was life imprisonment.

The Government filed a Motion to Permit Departure from Guideline Sentencing Range and from Mandatory Minimum Sentence under § 5K1.1 of the Guidelines and 18 U.S.C. § 3553(e) and the Court granted the Motion. The Court, departing downward from the Guideline imprisonment term of life, sentenced petitioner to 276 months imprisonment to be served concurrently with a prior sentence of thirteen (13) years imposed by Judge Waldman. By Order dated September 9, 1994, the Court reduced petitioner's sentence eighteen (18) months, from 276 to 258 months, so as to credit petitioner for time served under that prior sentence.

## II. Discussion

■ Petitioner makes three claims, each of which will be discussed in turn.[2] He first contends that his sentence should be reduced in light of a retroactive amendment to the United States Sentencing Guidelines, Amendment No. 505, which, under certain circumstances, allows for a reduction in a defendant's base offense level. This claim has no merit and will be denied. Second, he

**2.** The Court concludes that petitioner's § 2255 motion is not precluded by the one-year limitations period of the Antiterrorism and Effective Death Penalty Act of April 24, 1996 ("AEDPA"). The AEDPA provides that the limitations period applies to § 2255 motions and generally shall run from the date on which the judgment of conviction became final. See 28 U.S.C. § 2255 (6th unnumbered paragraph). However, there is a split in authority regarding the applicability of the AEDPA's limitations period to § 2255 motions which were filed after the effective date of the AEDPA and which relate to cases which became final more than one year before the AEDPA's enactment. Some courts have ruled that the AEDPA's limitations period applies to and bars such § 2255 motions. *See, e.g., Clarke v. United States*, 955 F.Supp. 593, 597 (E.D.Va. 1997). The greater weight of authority holds that courts should afford a reasonable period of time in which to file such § 2255 motions.

In this case, petitioner's motion was filed on July 15, 1996, more than one year after his judgment of conviction became final on January 22, 1993, but less than three months after the effective date of the AEDPA. Because the Court is concerned about the potential constitutional implications of barring such motions, and because those whose convictions become final after the effective date of the AEDPA are generally afforded one year to file a § 2255 motion, the Court concludes that, in a case such as this, a

petitioner also should be afforded a reasonable time after the passage of the AEDPA to file a § 2255 motion; in this case, because petitioner filed his motion within three months after the AEDPA's enactment, the Court concludes that petitioner's motion was filed within a reasonable time and is therefore not barred. *See United States v. Ortiz*, No. 91–1250, 1997 WL 214934, *5 (E.D.Pa. Apr. 28, 1997) (holding that § 2255 motion filed ten months after the AEDPA became effective, but more than a year after the running of the limitations period, was filed within a reasonable time and thus was not barred (citing *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983))); *United States v. Rienzi*, No. 96–4829, 1996 WL 605130, *1 (E.D.Pa. Oct.21, 1996); *see also United States v. Simmonds*, 111 F.3d 737, 744–46 (10th Cir.1997) (holding that a habeas petitioner should have a full year after the effective date of the AEDPA to file his petition); *Lindh v. Murphy*, 96 F.3d 856, 866 (7th Cir.1996) (concluding same), *rev'd on other grounds*, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). *But see Peterson v. Demskie*, 107 F.3d 92, 93 (2d Cir.1997) ("[W]e see no need to accord a full year after the effective date of the AEDPA. At the same time, we do not think that the alternative of a 'reasonable time' should be applied with undue rigor."). Moreover, the Court notes that the Government did not argue that petitioner's § 2255 motion was time barred.

asserts that his counsel was ineffective in numerous respects. Excepting only petitioner's claim that his counsel was ineffective for failing to perfect an appeal, on which the Court will hold an evidentiary hearing to develop the factual record, the Court concludes that this assertion also has no merit and also will be denied. Finally, petitioner maintains that the Government breached the Plea Agreement in a number of ways. The Court dismisses each of the claims concerning the Plea Agreement, except one, that regarding a stipulation in the Plea Agreement which was reiterated at the March 21, 1991 Change of Plea Hearing. In order to further develop the factual record, the Court will conduct an evidentiary hearing concerning that claim.

## A. Retroactive Amendment of Sentencing Guidelines

 First petitioner argues that his sentence should be reduced in light of the retroactive application of Amendment No. 505 to the Sentencing Guidelines.[3] Pursuant to the retroactive application of that Amendment, the sentencing court may, at its discretion under 18 U.S.C. § 3582(c)(2), reduce the sentences of defendants whose responsibility for the quantity of drugs distributed placed them at a base offense level greater than 38 under the Guidelines in effect at the time of their sentencing. See U.S.S.G., Amendment 505 (retroactive effective Nov. 1, 1995 by § 1B1.10(c)). Because petitioner's base offense level calculated based on drug quantity was 42 under the Guidelines in effect at his

sentencing, his sentence must be reevaluated under the retroactive Amendment.

Application of the retroactive Amendment in this case reduces petitioner's base offense level from 42 to 38. The adding of two levels to the base level pursuant to § 2D1.2(a)(1) for distribution within 1,000 feet of a school and two levels for obstruction of justice under § 3C1.1 yields a total offense level of 42.[4] The Guideline imprisonment range for a total offense level of 42, in any criminal history category, is 360 months imprisonment to life imprisonment.

Thus, the question before the Court is whether it should reduce petitioner's sentence pursuant to 18 U.S.C. § 3582(c)(2) because the guideline sentence under the retroactive amendment is 360 months to life imprisonment instead of life imprisonment. After reviewing the sentencing transcript and the presentence report, and considering petitioner's cooperation, the Court concludes that it should not reduce petitioner's sentence. In departing downward pursuant to § 5K1.1 and 18 U.S.C. § 3553(e), the Court would have imposed the same sentence even if, at the time of sentencing, the Guideline sentencing range was 360 months to life imprisonment. Finally, the Court notes that the extent of the departure, to 276 months, is substantial whether starting from a guideline sentence of 360 months to life, or life.

## B. Ineffective Assistance of Counsel

Petitioner contends that his counsel was ineffective in violation of his Sixth Amendment rights.[5] To prevail on his ineffective

---

3. This claim is properly raised not by a petition pursuant to § 2255, but in a motion pursuant to 18 U.S.C. § 3582. Accordingly, the Court will treat petitioner's claim as a motion pursuant to 18 U.S.C. § 3582(c)(2).

4. Petitioner contends that his total offense level should be 38, that his criminal history category should be II, and that the Guideline range should therefore be 235 to 293 months. However, petitioner's calculation is incorrect. Petitioner correctly starts with a base offense level of 38 and correctly augments the offense level by two for obstruction of justice. However, petitioner erroneously suggests that the base level should be increased only one level pursuant to § 2D1.2(a)(2) for distribution near a school. Where, as in this case, all of the drugs are distributed within 1,000 feet of a school, two

levels are added to the base offense level. See U.S.S.G. § 2D1.2(a)(1). Section 2D1.2(a)(2) is implicated only when some, but not all, of the drugs are distributed within 1,000 feet of a protected location. Further, although petitioner asserts that his offense level should be reduced three levels for acceptance of responsibility, the Court concluded that petitioner was not entitled to any reduction for acceptance of responsibility under § 3E1.1. See January 22, 1993, Tr. at 533–35.

5. A § 2255 petition is the proper means by which a federal prisoner can allege ineffectiveness of counsel. See United States v. DeRewal, 10 F.3d 100, 103–04 (3d Cir.1993), cert. denied, 511 U.S. 1033, 114 S.Ct. 1544, 128 L.Ed.2d 196 (1994) (finding that a § 2255 petitioner first presenting

assistance of counsel claims petitioner must make the twofold showing required under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, petitioner must show that counsel's performance was so deficient that it falls below "an objective standard of reasonableness." *See id.* at 688, 104 S.Ct. at 2064. Second, petitioner must demonstrate that counsel's "deficient performance prejudiced the defense;" that is, there is a reasonable probability that the result would have been different but for the deficient performance. *Id.* at 687, 104 S.Ct. at 2064.

Petitioner maintains that his counsel was ineffective for eight reasons. Six of petitioner's arguments have no merit and are addressed seriatim. The Court addresses, but will defer ruling on, a seventh claim—that petitioner's counsel was ineffective for failing to perfect an appeal—until after an evidentiary hearing. Also, the Court need not address an eighth claim, that is, that petitioner's counsel was ineffective for failing to argue at sentencing that the Government breached the Plea Agreement, *see* Memorandum of Law in Support of Petitioner's Motion at 8, because such a finding of ineffectiveness is dependent upon whether the Government breached the Plea Agreement, an issue which the Court examines in Section II.C of this Memorandum.

■ First, in light of the fact that proceeds of petitioner's drug offenses were subject to civil forfeiture on September 18, 1990, the day he was taken into custody, petitioner asserts that his counsel was ineffective for failing to file a motion challenging his prosecution on double jeopardy grounds in light of the Supreme Court decision in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). However, even had counsel made such a motion on or before March 21, 1991, the date on which petitioner pled guilty, the motion would have been denied. *Halper* announced a "rule of reason" for the "rare case ... where a fixed penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly dis-

proportionate to the damages he had caused" such that the civil forfeiture amounts to punishment for purposes of the Double Jeopardy Clause. *Id.* at 449, 109 S.Ct. at 1902. Here, as analysis of caselaw preceeding petitioner's guilty plea corroborates, the civil forfeiture of the proceeds of petitioner's drug activities—approximately $1000 in cash which petitioner had on his person when taken into custody and a blue 1986 Chevrolet Astro van in which petitioner was riding at that time— are not "overwhelmingly disproportionate," *id.,* when weighed against the fact that petitioner was criminally responsible for distribution of in excess of fifteen kilograms of crack cocaine. *See, e.g., United States v. Real Property Known as 214 Broadway,* No. 88–6261, 1991 WL 35827, *2 n. 2 (S.D.N.Y. March 13, 1991) (holding that in light of the contemplated sale of five kilograms of cocaine, the forfeiture of a three story building was not disproportionate and thus not punishment), *aff'd,* 953 F.2d 635 (2d Cir.1991); *United States v. Cunningham,* 757 F.Supp. 840, 846 (S.D.Ohio) (forfeiture of $430,000 in drug proceeds is "hardly 'the rare case' as enunciated in *Halper* " and is thus not punishment), *aff'd,* 943 F.2d 53 (6th Cir.1991). Moreover, the recent decision of the Supreme Court in *United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), confirms that the forfeiture at issue in this case is not punishment for purposes of the Double Jeopardy clause under current law. Thus, petitioner's ineffective assistance claim on that ground has no merit.

■ Second, petitioner maintains that counsel was ineffective for not recommending against petitioner stipulating that he was responsible for distributing crack cocaine. The complete answer to that charge lies in the fact that the Court concluded at sentencing, independent of the stipulation, that petitioner was responsible for the distribution of in excess of 15 kilograms of crack cocaine. *See generally* Jan. 22, 1993, Tr. at 511–524. That conclusion was based on the following evidence.

an ineffective assistance of counsel claim in a motion under § 2255 is not held to the cause and prejudice standard of *United States v. Frady,* 456

U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)).

Petitioner participated in the conduct which led to the establishment of the RCO at 17th and Mount Vernon Streets in 1987. Id. at 523. Also, petitioner continually furthered the interests of the RCO at 17th and Mount Vernon by, *inter alia,* taking control for a month (during December 1988 and January 1989) of drug distribution at 17th and Mount Vernon Streets with his brother Jerry when their brother Richard, leader of the RCO, was hospitalized after being shot, Jose Colon, January 21, 1993, Tr. at 112, 132; participating in violent acts, including an attack with a machete and threatening rivals with a baseball bat in order to protect the RCO's sale of drugs at 17th and Mount Vernon Streets, *id.* at 129–131; and engaging in strategy sessions with his brothers at their mother's house concerning the business at 17th and Mount Vernon Streets, Jan. 22, 1993, Tr. at 497. *See also id.* at 236–37 (Julio Santiago testifying that petitioner discussed with him how the business (including the crack cocaine business) was doing at 17th and Mount Vernon Streets). And, the Court finds, based on the testimony of Julio Santiago, a cooperating co-conspirator, that for a six or seven month period in 1989 to 1990 Santiago went twice a week to buy one kilogram of crack cocaine for 17th and Mount Vernon Streets and that during the summer of 1990 Santiago went twice a week to buy two kilograms of crack cocaine for 17th and Mount Vernon Streets,[6] and, significantly, that sometimes this was done at petitioner's direction or with petitioner. *Id.* at 230–38; *see also id.* at 503–04 (AUSA Zauzmer, upon whose review of the evidence the Court stated that it relied, *id.* at 523, summarizing Santiago's testimony).

Based on petitioner's membership and role in the RCO, and testimony linking him to crack cocaine, the Court found sufficient evidence to conclude by a preponderance of the evidence that petitioner was responsible for distribution of in excess of fifteen kilograms of crack cocaine. *Id.* at 522–24. The distribution of over fifteen kilograms of crack cocaine was in furtherance of petitioner's "jointly undertaken criminal activity" and was "foreseeable" to petitioner. *Id.* at 524; *see also United States v. Collado,* 975 F.2d 985, 995 (3d Cir.1992) (articulating the factors a court must consider in assessing the relevant conduct which can be attributed to a defendant under U.S.S.G. § 1B1.3). Because such findings were independent of petitioner's stipulation, petitioner was not prejudiced by any alleged failure of his counsel to recommend against such a stipulation.

■ Third, petitioner contends that counsel should have objected to the assessment of three criminal history points petitioner received for a prior conviction. However, not only did petitioner's counsel unsuccessfully object to this calculation at sentencing, Jan. 22, 1993, Tr. at 535–37, but the issue is of no consequence because the sentencing range for petitioner's reduced total offense level (42, in light of Amendment No. 505), *see supra* page 203, and all higher offense levels, is the same regardless of criminal history category.

■ Fourth, petitioner argues that counsel was ineffective for failing to object to the testimony of Philadelphia Mayor Edward Rendell at sentencing. However, counsel did object, albeit unsuccessfully. January 21, 1993, Tr. at 52–53; *see also* January 22, 1993, Tr. at 566. Moreover, the issue is of no moment because despite the Mayor's recommendation for no "leniency," *see* January 21, 1993, Tr. at 59, 61, as previously explained, the Court departed from the Guideline sen-

---

6. Although the Court found this evidence persuasive in demonstrating that petitioner was responsible for the distribution of crack cocaine at 17th and Mount Vernon Streets, the Government submitted to the Probation Office more conservative estimates of the amount of crack cocaine distributed by the RCO, *see id.* at 504; the Probation Office adopted those more conservative estimates into the Pre–Sentence Report, and the Court relied upon the Pre–Sentence Report at petitioner's sentencing. According to the Pre–Sentence Report, the RCO distributed one kilogram of crack cocaine per week for a period of about twenty-six weeks (from Winter 1988 to April 1989), three kilograms of crack cocaine per week for a period of about twenty-six weeks (from April 1989 to October 1989), 1.5 kilograms of crack cocaine per week for a period of about thirteen weeks (from October 1989 to January 1990), and one kilogram of crack cocaine a week for a period of about thirteen weeks (from January 1990 to April 1990) at 17th and Mount Vernon Streets.

tence of life imprisonment and sentenced petitioner to 276 months (which was later reduced to 258 months to credit petitioner for time served under a prior sentence).

■ Fifth, petitioner contends that his counsel was ineffective in failing to insist that the Court comply with U.S.S.G. § 6A1.3(b), which requires the Court to provide a reasonable opportunity for objections to its tentative findings before imposition of sentence. Here, counsel for petitioner informed the probation officer of his objections to certain sentencing guideline calculations made by the probation officer, submitted a sentencing memorandum and supplemental sentencing memorandum, and was given sufficient opportunity to present his position to the Court at sentencing before the Court imposed sentence. In fact, in part due to counsel's argument at sentencing, the Court declined to find that petitioner was a leader of the RCO which would have increased petitioner's offense level by four. January 22, 1993, Tr. at 524–25.

Sixth, petitioner claims that his counsel was ineffective for failing to oppose unspecified sentencing adjustments. *See* Traverse at eighth unnumbered page. However, as explained above, counsel argued strenuously against each and every adjustment of the offense level which would have adversely affected petitioner.

■ Seventh, petitioner argues that his counsel was ineffective for failing to appeal his sentence. *See* Traverse at ninth unnumbered page. A defendant's right to effective assistance of counsel includes the right to effective assistance of counsel on direct appeal. *Evitts v. Lucey,* 469 U.S. 387, 396–97, 105 S.Ct. 830, 836–37, 83 L.Ed.2d 821 (1985); *see also* 18 U.S.C. § 3742(a) (allowing for direct appeal from sentence imposed in violation of law or based on incorrect application of sentencing guidelines). Where a defendant claims that his counsel failed to perfect an appeal of his sentence, because he is asserting that he was deprived of *any* assistance on appeal he need not make a specific showing of prejudice but need only satisfy the first prong of *Strickland. United States v. Nagib,* 56 F.3d 798, 801 (7th Cir.1995); *United States v. Peak,* 992 F.2d 39, 42 (4th Cir.1993). In analyzing whether the performance of petitioner's counsel fell below an objective standard of reasonableness, the Court must decide whether counsel "explain[ed] the advantages and disadvantages of an appeal, advise[d] the defendant as to whether there [we]re meritorious grounds for an appeal, and inquire[d] whether the defendant want[ed] to appeal." *Romero v. Tansy,* 46 F.3d 1024, 1031 (10th Cir.) (citations omitted), *cert. denied,* 515 U.S. 1148, 115 S.Ct. 2591, 132 L.Ed.2d 839 (1995). These obligations are not discharged unless the petitioner makes a voluntary, knowing and intelligent waiver of his right to appeal. *Id.*

■ Unless petitioner's attorney adequately advised petitioner of his appellate rights and petitioner consented—voluntarily, knowingly, and intelligently—to waiver of his right to appeal, counsel would have performed below an objective standard of reasonableness and would have been ineffective. *United States v. Stearns,* 68 F.3d 328, 330 (9th Cir.1995); *Romero,* 46 F.3d at 1031. However, if counsel appropriately advised petitioner of his appellate rights and petitioner consented to waive those rights, counsel's performance would have been entirely appropriate and thus not constitutionally deficient. *See United States v. Colon,* No. 90–431–07, 1996 WL 114810, *2 (E.D.Pa. March 13, 1996). In order to determine whether petitioner consented to waiver of his right to appeal, the Court concludes that a hearing must be held.[7]

### C. Breach of Plea Agreement

Petitioner also argues that the Government breached the Plea Agreement. First, Petitioner maintains that the Government breached the "oral understandings" of the Plea Agreement by recommending a life sen-

---

7. Should the Court conclude at that hearing that petitioner was not properly advised of, or did not consent to, the waiver of his right to appeal, his right of appeal will be reinstated by vacating the existing sentence and reentering it, thus allowing him an opportunity to appeal from his sentence. *Stearns,* 68 F.3d at 330–31.

tence at sentencing. See Memorandum in Support of Petitioner's Motion at 5–6. Second, petitioner contends that in arguing against a reduction in the offense level for acceptance of responsibility the Government breached Paragraph 6(k) of the Plea Agreement.[8] Third, although not specifically raised in his petition, implicit in the second claim is the argument that the Government breached the Plea Agreement by reiterating the stipulation in Paragraph 6(k) at the March 21, 1991 hearing and then arguing to the contrary at sentencing. The Court will dismiss the first two claims. With respect to the third claim, the Court will defer ruling until after an evidentiary hearing.

### 1. Procedural Default

■ Because petitioner did not raise any of the claims relating to the Plea Agreement on direct appeal,[9] under *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), petitioner must show both " 'cause' excusing his ... procedural default" and " 'actual prejudice' resulting from the error[] of which he complains" before this Court may evaluate his claim. *Id.* at 168, 102 S.Ct. at 1594; *see also United States v. Essig,* 10 F.3d 968, 976–79 (3d Cir.1994).[10] Petitioner does not allege any cause and prejudice for his procedural default. Nevertheless, because the cause and prejudice requirement can be satisfied by a showing of ineffective assistance of counsel, *see Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986) and because petitioner alleges in his § 2255 Motion that his counsel was ineffective for, *inter alia,* failing to argue at sentencing that the Government breached the Plea Agreement, *see supra* pp. 203–204, the Court will treat petitioner's ineffective assistance claim as an allegation of cause and prejudice. *See Finkley v. United States,* No. 91–3500, 1995 WL 11975, *2 (E.D.Pa. Jan.5, 1995). Thus, if petitioner has presented a valid claim of ineffective assistance with respect to his coun-

sel's failure to argue that the Government breached the Plea Agreement, he will have satisfied the cause and prejudice standard, and will not be procedurally barred from relief with regard to his three claims that the Government breached the Plea Agreement.

With respect to the first claim asserting a breach of the oral understandings of the Plea Agreement and the second contention regarding the breach of the stipulation in Paragraph 6(k) of the Plea Agreement, the Court concludes that such claims have no merit, that petitioner has therefore not asserted a valid claim of ineffectiveness of counsel (because petitioner was not prejudiced by his counsel's failure to press such claims) and, as a result, that petitioner's default cannot be excused. These claims will therefore be dismissed. With respect to the third claim (that the Government breached the Plea Agreement when it reiterated the stipulation in Paragraph 6(k) at the March 21, 1991 hearing but then argued to the contrary at sentencing) the Court will schedule an evidentiary hearing to address factual issues. As a result, the Court defers ruling on whether petitioner is procedurally barred from relief with respect to this claim until completion of the hearing.

### 2. Legal Standard

■ Plea agreements are interpreted under general contract principles. *United States v. Hayes,* 946 F.2d 230, 233 n. 3 (3d Cir.1991). The burden of proving the breach is on the party asserting it. *Green,* 1994 WL 161364, at *5. In *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Supreme Court held that when a "plea rests in any significant degree on a promise or any agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499; *see also*

---

8. Petitioner does not specifically refer to Paragraph 6(k) in his Motion or reply to the Government's Response, which he designated "Traverse."

9. On January 31, 1994, petitioner filed a Notice of Appeal regarding only the Court's Order dated

January 18, 1994 denying Petitioner's *pro se* Motion for Return of Property. On March 23, 1994, petitioner's appeal was dismissed for failure to timely prosecute.

10. The Court notes that the Government did not raise the *Frady* issue.

*Government of Virgin Islands v. Scotland,* 614 F.2d 360, 365 (3d Cir.1980) (concluding that in absence of detrimental reliance on an initial plea offer defendant is not entitled to specific performance of that offer). In following *Santobello,* the Third Circuit has stated that "the government must adhere directly to the terms of the bargain it strikes with defendants." *United States v. Moscahlaidis,* 868 F.2d 1357, 1361 (3d Cir.1989) (citations omitted). Because in negotiating a plea a defendant is agreeing to surrender his constitutional rights, including his liberty, courts must closely scrutinize the promise made by the Government. *Hayes,* 946 F.2d at 233.

■■■■■ Moreover, under *Santobello,* "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of the plea" an inadvertent breach "does not lessen its impact." 404 U.S. at 262, 92 S.Ct. at 499. As such, the great majority of courts have held that the harmless error doctrine does not apply, even if the Court would have given the same sentence absent the breach. *See, e.g., United States v. Dellorfano,* No. 94–7566, 1995 WL 519687, *6 (E.D.Pa. Aug.29, 1995), *aff'd,* 106 F.3d 387 (3d Cir.1996). *But see United States v. Casamento,* 887 F.2d 1141, 1181 (2d Cir.), *cert. denied,* 887 F.2d 1141 (1989). Also, because a stipulation between the parties is binding on the Government, it is irrelevant that such an agreement may not be binding on the Court. *United States v. King,* Nos. 91–5338, 91–5339, 1992 WL 75161, *2 (4th Cir. April 16, 1992) (unpublished opinion), *cert. denied,* 506 U.S. 898, 113 S.Ct. 281, 121 L.Ed.2d 207 (1992).[11] When a petitioner has already served a considerable portion of his sentence, the general remedy for breach of a plea agreement is specific performance of the plea agreement, in which case petitioner should be resentenced by a different judge. *See Santobello,*

404 U.S. at 263, 92 S.Ct. at 499 ("We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not the sentencing judge.").

*3. Breach of Oral Understandings Underlying the Plea Agreement*

■■■■■ Petitioner contends that the Government breached "the oral understandings underlying the Plea Agreement" by making "an impassioned plea for a life sentence." *See* Memorandum of Law in Support of Petitioner's Motion at 6. The Government denies that there were any oral understandings. The Court agrees with the Government and concludes that petitioner's argument is completely without merit in view of the integration clause in the Plea Agreement providing that "[i]t is agreed that no additional promises[,] agreements or conditions have been entered into other than those set forth in this agreement and none will be entered into unless in writing and signed by all parties." Plea Agreement at Paragraph 6(m); *see also United States v. Green,* No. 92–00591, 1994 WL 161364, *7 (E.D.Pa. April 26, 1994).

■■■■■ Related to petitioner's argument regarding an alleged breach of the oral understandings of the Plea Agreement is what, on the surface, might be perceived as an inconsistency between, on the one hand, the Government's decision to file a Motion to Permit Departure from Guideline Sentencing Range and From Mandatory Minimum Sentence, pursuant to § 5K1.1 of the Guidelines and 18 U.S.C. § 3553(e), and, on the other hand, the argument made in the Government's Revised Sentencing Memorandum that petitioner should be sentenced to life imprisonment, the Guideline sentence.[12] The Court finds no

---

11. The Court notes that this unpublished opinion has no precedential value, but finds it instructive.

12. The Government argued in its Revised Sentencing Memorandum that petitioner should be sentenced to life imprisonment. First, the Government maintained that petitioner was not entitled to a downward departure based on cooperation for which he had already received credit in his prior sentence in the case before Judge Waldman. The Government explained that it filed its

Motion to Permit Departure before sentencing in that case and, because its Motion was based in part upon a recognition of the cooperation in that case, it did not believe that petitioner was entitled to a departure in this case based on that same cooperation. Secondly, the Government contended that petitioner was not entitled to a departure because petitioner's cooperation regarding the RCO was not as substantial as the Government had "hope[d]" in filing its Motion to

such inconsistency. The Government did what it said it would do in Paragraph 6(c)(3) of the Plea Agreement—it filed a Motion to Permit Departure. That Motion left to the Court to decide whether to grant the Motion and, if so, what sentence below the Guideline sentence was appropriate in light of petitioner's cooperation. Moreover, at sentencing, after the Court granted the Government's Motion to Permit Departure, the Government, as it was permitted to do under the Plea Agreement, argued that petitioner was entitled to only "the most minimal departure," such that petitioner would receive a sentence greater than thirty years, and thus greater than Richard Ramos' sentence. *See* Jan. 22, 1993, Tr. at 544, 549, 558. Specifically, the Plea Agreement provided that "at the time of sentencing it is agreed that the Government will ... make whatever sentencing recommendation the government deems appropriate." Plea Agreement at Paragraph 6(c)(2); *see also* Government's Plea Memorandum at 2 ("The government reserves the right to make any recommendation regarding sentencing."). Thus, the Court finds no breach of the Plea Agreement with respect to the Government's decision to file a Motion to Permit Departure and its subsequent arguments for a life sentence, made before the Motion was granted, and for "the most minimal departure," made thereafter.

### 4. Breach of Plea Agreement Regarding Acceptance of Responsibility [13]

Petitioner's argument that the Government breached the Plea Agreement by arguing against a two level reduction to the offense level for acceptance of responsibility after having "stipulated that Mr. Ramos had accepted responsibility," *see* Traverse at seventh unnumbered page, is of greater import. In addressing this contention the Court must focus on Paragraph 6(k) of the Plea Agreement and a statement made in open Court at the March 21, 1991 Change of Plea Hearing,

which apparently reiterated the contents of Paragraph 6(k) of the Plea Agreement. Paragraph 6(k) provides that "The government agrees that *as of the date of this agreement*, the defendant has accepted responsibility for his criminal conduct, but both the government and the defendant acknowledge that this agreement is not binding upon the Probation Department or upon the Court." Plea Agreement at 11 (emphasis added). At the March 21, 1991 Change of Plea Hearing the Government stated: "we have stipulated that [Mr. Ramos] would be entitled to a two point reduction in the offense level because of his acceptance of responsibility that he's demonstrated to this point." Tr. at 12. Petitioner maintains that the Government breached the Plea Agreement when, despite its stipulation in Paragraph 6(k) and, presumably, its restatement of that stipulation at the March 21, 1991 hearing, it argued at sentencing that petitioner had not accepted responsibility: His actions are "as far from acceptance as you can get," the Government contended at sentencing. January 22, 1993, Tr. at 531–33.

### a. Paragraph 6(k) of the Plea Agreement

With reference to Paragraph 6(k) of the Plea Agreement, the Government stipulated that "*as of the date of this agreement*, the defendant has accepted responsibility for his criminal conduct." Plea Agreement at 6 (emphasis supplied). Petitioner contends that the Government breached this covenant when it argued at sentencing that petitioner did not deserve a two level reduction in his offense level for acceptance of responsibility. Significantly, however, the Plea Agreement, signed by the attorneys for the Government and defendant, and the defendant, is dated September 11, 1990. Thus, if, after September 11, 1990, the Government became aware of conduct which led it to conclude that defendant had not accepted responsibility for

---

Permit Departure, due in part to the facts that much of petitioner's cooperation was "untimely" and that further analysis established that petitioner had "lied" to the Government. *See* Government's Revised Sentencing Memorandum at 33–41.

13. Petitioner cites *United States v. Tabares,* 86 F.3d 326 (3d Cir.1996) and *United States v. Talladino,* 38 F.3d 1255 (1st Cir.1994). Neither case is apposite, as the case at bar does not involve a sentencing based on inaccurate facts as in *Tabares* or the Court's denial of the reduction under § 3E1.1(b) without analysis of the appropriate factors as in *Talladino.*

his criminal conduct, the Government would not have breached this stipulation in arguing against a two level decrease to petitioner's offense level.

Here, the record reflects that petitioner's conduct on which the Government relied in arguing against a decrease in petitioner's offense level for acceptance of responsibility occurred after petitioner signed the Plea Agreement on September 11, 1990. The Court found, at a hearing on January 28, 1991 on petitioner's motion to reconsider the revocation of his bail and at the January 22, 1993 sentencing, that the Government had met its burden of proving that in October and November 1990 petitioner threatened Julio Santiago and Yolanda Resto, witnesses who were cooperating with the Government. See January 28, 1991, Tr. at 116–17; January 22, 1993, Tr. at 528–29. Also, at those hearings, the Court ruled that there was probable cause to conclude that in October 1990 petitioner conspired to sell cocaine at Lee & Indiana streets. See January 28, 1991, Tr. at 37–40; January 22, 1993, Tr. at 532–24. As such, because the stipulation in Paragraph 6(k) of the Plea Agreement was expressly limited to facts known to the Government as of the date of the Agreement, September 11, 1990, without more, the Government did not breach that stipulation in arguing against a two level decrease to petitioner's offense level based on activities which occurred after the Plea Agreement was executed. See *United States v. Petkash*, No. 95–1550, 1996 WL 282138, *2 (2d Cir. May 29, 1996) (holding that government did not breach plea agreement when its decision was based on information learned after agreement was executed) (unpublished opinion).[14]

### b. The Statement at The March 21, 1991 Hearing

 Different issues are raised by the Government's restatement of Paragraph 6(k) at the March 21, 1991 Change of Plea hearing. At that hearing the Government stated:

"we have stipulated that [Mr. Ramos] would be entitled to a two point reduction in the offense level because of his acceptance of responsibility that he's demonstrated to this point." Tr. at 12. This statement appears to paraphrase Paragraph 6(k) of the Plea Agreement. However, in light of the Government's knowledge that petitioner had threatened witnesses and continued to sell drugs between executing the Plea Agreement on September 11, 1990 and the March 21, 1991 Plea Hearing, the conduct on which the Government based its decision to argue against a reduction in petitioner's offense level for acceptance of responsibility, this statement might have been made in error.

Petitioner did not expressly argue in his Motion that the Government breached the Plea Agreement by making the above statement to the Court on March 21, 1991 and then contending at sentencing that petitioner had not demonstrated an acceptance of responsibility. However, that argument is implicit in the claim that the Government breached Paragraph 6(k). Moreover, the argument presents numerous factual and legal issues which require an evidentiary hearing. At the hearing the parties will be permitted to present evidence and/or argument with respect to all matters relevant to the argument, including, but not limited to, the following: (1) whether the Government was not bound by the Plea Agreement because petitioner had already breached the Plea Agreement,[15] (2) whether petitioner's plea "rest[ed] in any significant degree," *Santobello*, 404 U.S. at 262, 92 S.Ct. at 499, on the reiteration at the March 21, 1991 Change of Plea Hearing of the stipulation in Paragraph 6(k) in the Plea Agreement, and (3) if petitioner did rely on that statement, whether such reliance was reasonable.

### III. Conclusion

Petitioner's request for an evidentiary hearing will be granted for the limited purposes of further developing the factual rec-

---

14. The Court notes that this unpublished opinion has no precedential value, but finds it instructive.

15. *See United States v. Merritt*, 988 F.2d 1298, 1313–14 (2d Cir.) ("A defendant who materially breaches a plea agreement may not claim its

benefits .... even if the Government had gone beyond what the agreement permitted." (citations omitted)), *cert. denied*, 508 U.S. 961, 113 S.Ct. 2933, 124 L.Ed.2d 683 (1993).

ord with respect to his claims that his counsel was ineffective for failing to file a notice of appeal and that the Government breached the Plea Agreement by reiterating a stipulation contained in the Plea Agreement at the March 21, 1991 Change of Plea Hearing and then arguing to the contrary at sentencing. Excepting only those two issues, on which the Court will rule after the hearing, Petitioner's request for an evidentiary hearing, will be denied.[16] Petitioner's motion will be denied with respect to his claim for reduction of his sentence in light of Amendment No. 505 and with respect to his claims that his counsel was ineffective, excepting the claim that his counsel was ineffective for failing to file a notice of appeal. The Motion will be dismissed with respect to his claims asserting breaches of the oral understandings of the Plea Agreement and Paragraph 6(k) of the Agreement.[17]

An appropriate order follows.

### ORDER

**AND NOW,** to wit, this 16th day of July, 1997, upon consideration of Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody with Request for Evidentiary Hearing (Document No. 49, filed July 15, 1996), Government's Response to Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Document No. 50, filed Aug. 6, 1996) and Petitioner's Traverse (Document No. 51, filed Aug. 20, 1996), for the reasons set forth in the attached memorandum, **IT IS ORDERED** that:

1. Petitioner's Request for an Evidentiary Hearing is **GRANTED** for the limited purposes of further developing the factual record regarding petitioner's claim (a) that his counsel was ineffective for failing to perfect an appeal and (b) that the Government breached a stipulation in the Plea Agreement when it reiterated that stipulation at the Change of Plea Hearing on March 21, 1991 by stating "we have stipulated that [Mr. Ramos] would be entitled to a two point reduction in the offense level because of his acceptance of responsibility that he's demonstrated to this point," but thereafter argued contrary to that stipulation at sentencing, and is **DENIED** in all other respects;

2. Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is **DISMISSED** with respect to the claims that the Government breached the Plea Agreement, excepting only the claim that the Government breached a stipulation in the Plea Agreement when it reiterated that stipulation at the Change of Plea Hearing but thereafter argued contrary to that stipulation at sentencing, which claim will be addressed at the above referenced evidentiary hearing and ruled on thereafter;

3. Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is **DENIED** with respect to the claim for reduction of his sentence by reason of Amendment No. 505 to the United States Sentencing Guidelines; and,

4. Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is **DENIED** with respect to the claims that his counsel was ineffective, excepting only the claim that his counsel was ineffective for failing to file a notice of appeal, which claim will be addressed at the above referenced evidentiary hearing and ruled on thereafter.

---

**16.** The second paragraph of § 2255 provides that the Court need not grant a hearing, if, as is true with respect to all claims other than the two on which the Court has granted petitioner's request for an evidentiary hearing, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."

**17.** Because an order dismissing in part and denying in part a § 2255 petition, but not ruling on all the claims, does not constitute a final order for purposes of an appeal, *Collins v. Miller,* 252 U.S. 364, 365, 370, 40 S.Ct. 347, 347–48, 349, 64

L.Ed. 616 (1920); *Bermudez v. Smith,* 797 F.2d 108, 109 (2d Cir.1986); *Thigpen v. Smith,* 792 F.2d 1507, 1516 n. 15 (11th Cir.1986); *see also* 2 James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 30.1 at p. 458 n. 13 (1988), it is not necessary, at this time, for the Court to determine whether a certificate of appealability is warranted, see 28 U.S.C. § 2253(c)(1). *See United States v. Eyer,* 113 F.3d 470, 473 (3d Cir.1997) (holding that district court judges have authority to issue certificates of appealability).