UNITED STATES of America

v.

Jose FLORES a/k/a "Blue"

Criminal Action No. 93–350–08.

United States District Court,
E.D. Pennsylvania.

Aug. 18, 1997.

---

Michael A. Schwartz, Asst. U.S. Atty., Philadelphia, PA, for U.S.

Robert B. Mozenter, Mozenter & Mozenter, Philadelphia, PA, for Jose Flores.

## MEMORANDUM & ORDER

DuBOIS, District Judge.

Presently before the Court is the request[1] of defendant Jose Flores for an order compelling the Government to file a motion to depart downward from the United States Sentencing Commission Guidelines ["U.S.S.G."] imprisonment range under U.S.S.G. § 5K1.1 and the mandatory minimum term of imprisonment under 18 U.S.C. § 3553(e).[2] Defendant seeks this remedy because he contends that the Government breached his Plea Agreement of March 4, 1994 by acting with an unconstitutional motive, a purpose not rationally related to a legitimate government end, or bad faith in refusing to file a downward departure motion. *See* Defendant's Supplemental Memo. of Law, at 3. It is the position of the Government that in failing to provide full and truthful cooperation, defendant did not comply with the terms of the Plea Agreement and, because of this breach, the Government is released from its obligations under the Agreement, including the provisions relating to the filing of a downward departure motion.

The Court concluded that defendant was entitled to a hearing on the issue. *Cf. United States v. Khan*, 920 F.2d 1100, 1102 (2d Cir.1990), *cert. denied*, 499 U.S. 969, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991). The hearing was held on April 12, 1996 and was continued on April 26, 1996.

---

1. This request was made during the sentencing hearing on April 12, 1996. There is no formal motion before the Court.

2. Section 5K1.1 of the U.S.S.G. permits a district court to impose a sentence below that which is required under the Guidelines if the Government finds that a defendant has rendered "substantial assistance in the investigation or prosecution of another person who has committed an offense," and files a downward departure motion. Similarly, 18 U.S.C. § 3553(e) empowers district courts, upon motion of the Government, to impose a sentence below the statutory minimum term of imprisonment if a defendant renders such substantial assistance.

The Court agrees with the Government and concludes that only the defendant breached the Plea Agreement. In so concluding, the Court finds that the Government did not act with an unconstitutional motive, a purpose not rationally related to a legitimate government end, or in bad faith when, after learning of defendant's breach, it decided against filing a downward departure motion. As a result, defendant's request for an order directing the Government to file such a motion will be denied and the Court will proceed with sentencing.

## I. Background

An Indictment filed on July 28, 1993 charged defendant and eleven others with, *inter alia,* conspiracy to distribute cocaine during the period March 1991 to October 1991. As part of the conspiracy, defendant worked for Cristobal Paz,[3] a major distributor of cocaine in the Philadelphia area. Initially, defendant was primarily responsible for coordinating the delivery of that cocaine to two other associates of Paz in the Baltimore area, James Graham and Earl Andrews, and collecting the proceeds from such sales. Pre–Sentence Report, at ¶¶ 102, 104. The cocaine defendant delivered for Paz was obtained by Paz from Oscar Delapuente, a co-defendant in Florida, and sources in New York. Defendant's relationship with Paz was short-lived due to a dispute over missing drug proceeds. Thereafter, for a short time, Delapuente, independently of Paz, supplied defendant with cocaine which defendant, in turn, distributed to Graham and Andrews. Significantly, although unknown to the Government until the Fall of 1995, defendant also was supplied with cocaine by Fernando Robles; defendant also sold that cocaine to Graham and Andrews.

On March 4, 1994, defendant pled guilty to Count One of the Indictment, charging him with conspiracy to distribute more than fifty kilograms of cocaine. In his written Plea Agreement dated that same day, defendant agreed to cooperate by providing "truthful, complete and accurate information," including "all information concerning his knowledge of, and participation in, the distribution of cocaine from in or about March 1991 through in or about October 1991, and any other crimes about which he has knowledge." Plea Agreement at ¶ 2(a), (b). Defendant also agreed that he would not "protect any person or entity through false information or omission." *Id.* at ¶ 2(c). Under the Agreement, defendant's obligation to cooperate was ongoing and was to continue even after sentencing. *Id.* at ¶ 2(i). The Agreement also stated that "if the government determines that defendant has not provided full and truthful cooperation ... the agreement may be voided by the government." *Id.* at ¶ 2(j).

The filing of a downward departure motion by the Government was covered in Paragraph 4(c) of the Agreement, which provides:

> If the Government in its sole discretion determines that the defendant has fulfilled his obligations of cooperation as set forth above, at the time of sentencing, the government will ... [m]ake a motion to allow the Court to depart from the Sentencing Guidelines pursuant to Sentencing Guidelines § 5K1.1 and the mandatory minimum term of imprisonment pursuant to 18 U.S.C. § 3553(e), if the government, in its sole discretion, determines that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense.

*Id.* at ¶ 4(c). Thus, the Government's obligation to file a downward departure motion as contemplated in Paragraph 4(c) is contingent upon defendant meeting two conditions. First, the Government must determine that defendant has provided truthful, complete and accurate information as required by Paragraph 2 of the Plea Agreement. *Id.* Second, the Government must conclude that defendant has "provided substantial assistance in the investigation or prosecution of another person who has committed an offense." *Id.*

On February 16, 18 and 22, 1994, Special Agent McGowan of the FBI, the agent leading the Government's investigation of the

---

3. Paz was charged by a separate indictment filed in Criminal No. 92–00055 for, *inter alia,* conspiracy to distribute cocaine.

indictment in which defendant was charged, conducted proffer sessions with defendant, one of which was described as a "substantive interview." Apr. 12, 1996, Tr. at 15. On March 7, 1994, after defendant had executed the Plea Agreement and pled guilty on March 4, 1994, Special Agent McGowan conducted a second "substantive interview" with defendant and prepared a report of that interview. *Id.* Defendant cooperated with and assisted the Government in these interviews by, *inter alia,* providing information that led one of his eleven co-defendants, Jose "Ray" Rosario, to plead guilty, and by offering to testify at the trial of another co-defendant, Aida "Lucy" Rosario.

On June 13, 1994, the Government filed a Consolidated Sentencing Memorandum in which it explained that "each of the eleven defendants being sentenced [the twelfth defendant, Lucy Rosario, was awaiting trial] at this time have cooperated with the government to a sufficient degree for the government to move to depart from their sentencing guidelines and their mandatory minimum terms of imprisonment that would otherwise be applicable." Sent. Memo. at 1–2. With respect to defendant, the Government stated that he should "receive full credit" for his cooperation and assistance. *Id.* at 21.

4. Although defendant waived his right to a speedy sentencing pending completion of the cooperation contemplated by his Plea Agreement, *see* Plea Agreement at ¶ 2(h), he now argues that he was prejudiced by the fact that his sentencing, which was originally scheduled for June 3, 1994, was unnecessarily delayed. Sentences in this multi-defendant case were originally postponed because one of the co-conspirators, Lucy Rosario, decided to go to trial and the parties agreed that sentencing of all other defendants should be continued until after they testified at her trial. It was not until March 15, 1995, when Lucy Rosario was arraigned on a Superseding Indictment, pled guilty and was sentenced, that defendant was no longer needed by the Government to testify against her.

By letter dated January 17, 1996, defendant, through counsel, requested that he be sentenced as soon as possible. The sentencings of each defendant other than Lucy Rosario were thereafter scheduled for the week of March 4, 1996. *See* Order of Feb. 9, 1996. After each of those defendants, including defendant, consented to a one month continuance, the sentences were rescheduled for the week of April 8, 1996. *See*

In assessing the degree of defendant's cooperation in the Consolidated Sentencing Memorandum, the Government ranked defendant as having been the eighth best cooperator out of the eleven cooperating defendants. The Government described his cooperation as "at best fair" and noted that he waited until shortly before trial to plead and cooperate and that "[t]o date, he has failed either to admit or convincingly refute his alleged involvement in the theft of $150,000 in drug proceeds." *Id.* at 20–21. Nevertheless, because "his decision to plead guilty was essential to the decision of his close friend, Jose Rosario, to also plead guilty" and because "[h]e was willing to testify against Lucy Rosario, but ultimately was not needed," the Government stated in the Sentencing Memorandum that it would file a downward departure motion at sentencing, despite the inadequacies of defendant's cooperation known at that time. *Id;* *see also* Apr. 12, 1996, Tr. at 37. At the hearing on this matter the parties stipulated that in June 1994 the Government would have moved at sentencing for a downward departure for defendant "[b]ased on what [it] knew at the time." Apr. 26, 1996, Tr. at 62–63.

■ In late October and early November 1995,[4] Special Agent Hadden of the FBI

Order of March 1, 1996. Sentencing for defendant was scheduled for Apr. 12, 1996. On that date, in connection with the sentencing, the Court held a hearing to address defendant's request for an order compelling the Government to file a downward departure motion. That hearing was continued on April 26, 1996. At the completion of the April 26, 1996 hearing the Court took the matter under advisement.

The short answer to defendant's argument that he was prejudiced by an unnecessary delay is the fact that, for reasons explained *infra,* the Court, in denying his request for an order compelling the Government to file a downward departure motion, relied only upon defendant's lies and omissions made at the March 7, 1994 interview, not the lies or omissions made at the earlier or later interviews. Thus, the action of the Court is based on defendant's mendaciousness at an interview three days after defendant pled guilty and more than one year before March 15, 1995, the earliest date on which defendant could have been sentenced. Moreover, the delay after March 15, 1995 was necessary and justifiable; it was due in large part to the handling by the Court of a complex criminal case involving na-

interviewed John Katelas, a recently-arrested, cooperating drug trafficker who was not named in the Indictment in which defendant was charged. Katelas told Special Agent Hadden that he had worked as a drug courier for defendant in 1991 and 1992, transporting cocaine with Jose Rosario from Philadelphia to the Baltimore area where it was sold to Graham and Andrews. Apr. 12, 1996, Tr. at 71–73. More significantly, Katelas told Special Agent Hadden that on at least five occasions he "observed" a man named Fernando Robles supply defendant with cocaine and that Katelas had also learned from "several" conversations with defendant that Robles had become defendant's "connection for cocaine" after defendant stopped working for Paz and after Delapuente stopped supplying defendant. Apr. 12, 1996, Tr. at 75, 79–80.[5] Katelas also testified that Jose Rosario was present when defendant purchased cocaine from Robles. See Apr. 12, 1996, Tr. at 103, Apr. 26, 1996, Tr. at 113.

During the interview on March 7, 1994, in response to questions about drug activities, defendant did not tell the Government about Robles or Katelas. Prior to interviewing Katelas, the Government had no information that defendant had a drug relationship with Robles; additionally, Special Agent McGowan did not know about Katelas or his dealings with defendant until Special Agent Hadden reported to him about the Katelas interviews in October and November 1995.

Robles was a "major drug trafficker" who had been investigated by the Government beginning in the Summer of 1994. The Government had sought corroborative evidence in furtherance of that investigation but was unsuccessful and closed the investigation in the Fall of 1994. Apr. 26, 1996, Tr. at 10, 55–56. After receiving Katelas' information, the agents who had been assigned to the Robles case, Special Agent Hadden, along with Special Agent Grizzle of the FBI, asked Special Agent McGowan to arrange an interview with defendant, who was on bail and awaiting sentencing, in order to determine whether defendant could provide information which would warrant reopening the Robles investigation. Id. at 57.

On November 9, 1995, Special Agent McGowan contacted defendant while defendant was reporting to his probation officer. Special Agent McGowan requested that defendant submit to questioning with Special Agents Hadden and Grizzle either at that time or at an appointed time, Apr. 26, 1996, Tr. at 99, and informed defendant that defendant should call his attorney if he wanted him to be present, id. at 99. Defendant's attorney had not been informed of this meeting, and defendant began the interview without his attorney. Defendant was initially "reluctan[t] to interview," Apr. 12, 1996, Ex. G–3 at 2, because he believed that he had already completed his cooperation and was no longer obligated to answer questions, Apr. 26, 1996, Tr. at 61. After Special Agent McGowan showed him a copy of his Plea Agreement and correctly informed him that the Agreement required him to cooperate with the Government regarding his knowledge of and participation in the charged conspiracy and any other crime about which he had knowledge, defendant agreed to be interviewed by Special Agents Hadden and Grizzle. Id. In the interview Special Agents Hadden and Grizzle advised defendant they had received information that defendant had been supplied with cocaine by someone whom defendant had not previously disclosed to Special Agent McGowan during his interviews in the Spring of 1994. Thereafter, defendant identified Robles and several other people from photographs, but said that he

---

tional security interests and extensive and time-sensitive proceedings under the Classified Information Procedures Act, see 18 U.S.C.App. III. Thus, the Court holds, consistent with the requirement in Federal Rule of Criminal Procedure 32(a), that sentencing was "imposed without unnecessary delay." See United States v. Mulligan, No. 92–406, 1995 WL 328915, *1–*2 (E.D.Pa. May 30, 1995) (in determining whether the delay in sentencing was "unnecessary," the court should look to the length of delay, the reasons for the delay, whether defendant has been asserting his rights, and whether the delay prejudiced defendant), aff'd, 92 F.3d 1173 (3d Cir.1996).

5. Although Special Agent Hadden's report on the October 25, 26, and November 1, 1995 interviews with Katelas does not mention the alleged drug relationship between defendant and Robles, Katelas testified that he provided the FBI with this information, and that was confirmed by the testimony of Special Agent Hadden.

had no information concerning their drug trafficking activities. *See* Apr. 26, 1996, Tr. at 59. After having done so defendant stopped the interview in order to consult with his attorney. "He was told that the agents assigned to the investigation did not believe his responses ... and [that] after he spoke to his attorney, he should contact the agents again." Apr. 26, 1996, Tr. at 78–79, *see also id.* at 62, 109.[6] Defendant never did so. However, after the November 9, 1995 interview, defense counsel, Robert B. Mozenter, called Assistant United States Attorney ("AUSA") Suddath to tell him that if the agents wanted to speak to defendant again, the agents should call AUSA Suddath who, in turn, should notify Mr. Mozenter. Apr. 26, 1996, Tr. at 62–64. The Government did not attempt to recontact defendant or Mr. Mozenter.

On March 20, 1996, Special Agent McGowan, former AUSA Suddath, and AUSA Schwartz[7] discussed the possibility of not filing a downward departure motion for defendant because of the recently learned information that defendant had failed to disclose in February and March of 1994 and November of 1995 that Robles supplied him with cocaine and that he used Katelas as a courier to deliver the cocaine. According to Special Agent McGowan, at that point they decided to conduct an investigation in an effort to confirm whether defendant had breached his Plea Agreement by being untruthful. Apr. 26, 1996, Tr. at 79–80. On March 21, 1996 Special Agent Hadden reinterviewed Katelas, and reported thereafter that he believed Katelas was credible and that his information had been corroborated. *See* Apr. 26, 1996, Tr. 65, 80–81. As a result, the Government did not reinterview defendant, nor did it interview any other codefendants who, ac-

cording to Katelas, also knew about Robles' and Katelas' involvement in the drug conspiracy.[8] After two supervising attorneys reviewed the decision, the Government decided that, because defendant had lied about Katelas and, of more significance, Robles, it would not file a motion to depart downward under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), despite its earlier statement to the contrary made before it learned of defendant's involvement with Robles and Katelas.

This decision was set forth in the Government's Supplemental Consolidated Sentencing Memorandum, filed on March 25, 1996. The Government's decision was based on its conclusion, stated in the Supplemental Memorandum, that defendant failed to meet the first requirement of paragraph 4(c) of his Plea Agreement, that is, providing "all information concerning his knowledge of, and participation in, the distribution of cocaine from in or about March 1991, through in or about October 1991, and any other crimes about which he has knowledge." Plea Agreement at ¶ 2(b) (incorporated by ¶ 4(c)). The Government contends that defendant's lies and omissions at his interviews in February and March 1994 amounted to a material breach of the Plea Agreement, and that the breach was compounded when defendant also lied at the November 9, 1995 interview. Apr. 12, 1996, Tr. at 5, 55, 87; Apr. 26, 1996, Tr. at 6, 76; Government's Memo. Regarding Decision to Not File a Downward Departure Motion, at 12. The Government concedes that defendant has satisfied the second requirement of Paragraph 4(c) of the Plea Agreement by providing substantial assistance in the investigation or prosecution of others. In response, defendant asserts that the Government's reversal of its decision to file a

---

**6.** It appears that at that time the agents also told defendant that after he spoke to his attorney he could take a polygraph examination. In a letter to defense counsel dated April 1, 1996, the Government "renew[ed]" its offer made to defendant in November 1995 to allow him to take a polygraph examination concerning the subjects raised at the November 1995 interview. Defendant never submitted to a polygraph examination. A copy of the April 1, 1996 letter was presented to the Court during the hearing and will be received in evidence.

**7.** AUSA Suddath left the U.S. Attorney's Office before the date of the meeting but nevertheless was asked to, and did, participate in the meeting. AUSA Schwartz, who was also present at the meeting, assumed AUSA Suddath's responsibilities on this case.

**8.** In April 1996, after the Government had decided against filing a motion for downward departure, the Government interviewed codefendants Jose Rosario and Graham and John Joseph Colwell, who was not a codefendant.

downward departure motion in his case was made in bad faith or with an unconstitutional motive and, therefore, was a breach of the Plea Agreement.

## II. Discussion

### A. The Legal Standard

██ Absent a plea agreement, the Government's decision not to file a downward departure is subject to judicial review only to determine whether the Government's decision was based on an unconstitutional motive or a reason not rationally related to any legitimate Government end. *See Wade v. United States*, 504 U.S. 181, 186, 112 S.Ct. 1840, 1844, 118 L.Ed.2d 524 (1992); *see also United States v. Paramo*, 998 F.2d 1212, 1214, 1221 (3d Cir.1993) (holding that absent a motion by the government the district court has authority to grant a downward departure for substantial assistance only if the government's sole motive for refusing to file the downward departure motion was unconstitutional), *cert. denied*, 510 U.S. 1121, 114 S.Ct. 1076, 127 L.Ed.2d 393 (1994). However, when the Government bargains away some of its discretion not to move for a downward departure motion through a plea agreement, courts are instructed to invoke a " 'more searching' review" as to whether the government should have filed such a motion. *United States v. Kaye*, 65 F.3d 240, 242–43 (2d Cir.1995) (quoting *United States v. Leonard*, 50 F.3d 1152, 1157 (2d Cir.1995)); *see also United States v. Juliano*, 947 F.Supp. 777, 786 (D.N.J.1996). Where "the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance [and thus the decision of whether to file a departure motion] to the sole discretion of the prosecutor, that discretion is limited by the requirement that it be exercised fairly and in good faith," in addition to the due process limitations imposed by *Wade. Khan*, 920 F.2d at 1105; *see also United States v. Brechner*, 99 F.3d 96, 99 (2d Cir.1996); *United States v. Disla–Montano*, No. 92–00605, 1993 WL 541701, *3 (E.D.Pa. Jan.3, 1994); *United States v. Smith*, No. 92–27–4, 1993 WL 276930 at *4 (E.D.Pa. July 21, 1993) ("The prosecutor's discretion is not complete-

ly unlimited since every contract implies an obligation of good faith and fair dealing." (citations omitted)), *aff'd in unpublished opinion*, 27 F.3d 560 (3d Cir.1994). *But cf. United States v. Almodovar*, No. 93–00001–1, 1996 WL 114930, *2 (E.D.Pa. Mar.14, 1996) (court applied unconstitutional motive standard and did not discuss the good faith issue in addressing the government's decision not to file a downward departure motion where the plea agreement provided for the filing of such a motion if the government concluded that defendant rendered substantial assistance), *aff'd*, No. 95–2081, slip op., 100 F.3d 948 (3d Cir. Sept. 27, 1996) (unpublished opinion), *cert. denied*, — U.S. ——, 117 S.Ct. 1013, 136 L.Ed.2d 890 (1997).

Some courts apply a more narrow standard, that is, they review the government's actions only for an unconstitutional motive or a purpose not rationally related to a legitimate government end, rather than for the absence of good faith, in determining whether a district court has authority to grant a downward departure motion for substantial assistance when the plea agreement provides for the filing of such a motion and the government decides not to do so. *See United States v. Proctor*, 931 F.Supp. 897, 902–03 (D.D.C.1996) (noting split among courts of appeals). The Third Circuit has not yet directly reached this issue in a published opinion, *see United States v. Gonzales*, 927 F.2d 139, 145 n. 5 (3d Cir.1991), although in two recent unpublished Opinions it analyzed the conduct of the government by considering whether it acted in bad faith, in addition to an unconstitutional motive or a purpose not rationally related to a legitimate government end. *See United States v. Michael Powers*, No. 96–1719, slip op. at 5, — F.3d ——, —— (3d Cir. Aug. 4, 1997); *United States v. Wilfredo Orama, Jr.*, No. 96–1874, slip op. at 4, — F.3d ——, —— (3d Cir. July 25, 1997). These unpublished opinions have no precedential value under § 5.8 of the Internal Operating Procedures of the Third Circuit, but the Court finds them instructive.

At a hearing on April 8, 1996, in which Defendant's Motion to Withdraw Guilty Plea

was addressed,[9] the Government agreed that, consistent with cases in the Second Circuit and this District, the Court should look to whether the Government's decision not to file a downward departure motion was made with an unconstitutional motive, a purpose not rationally related to a legitimate government end, or in bad faith. *See* Apr. 8, 1996, Tr. at 17–18. The Court agrees that this broader standard is the appropriate standard and will apply it.

■■■■ Plea agreements are interpreted according to contract principles. *United States v. Moscahlaidis*, 868 F.2d 1357, 1361 (3d Cir.1989). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such a promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). However, when the defendant breaches the plea agreement, the government is released from fulfilling such promises. *United States v. Carrara*, 49 F.3d 105, 107 (3d Cir.1995). As in any contractual dispute, the party alleging breach of a plea agreement has the burden of proof by a preponderance of the evidence. *United States v. Conner*, 930 F.2d 1073 (4th Cir.), *cert. denied* 502 U.S. 958, 112 S.Ct. 420, 116 L.Ed.2d 440 (1991); *United States v. Watson*, 988 F.2d 544, 548 (5th Cir.1993), *cert. denied sub nom., Campbell v. United States*, 510 U.S. 1048, 114 S.Ct. 698, 126 L.Ed.2d 665 (1994). And, when the government's obligations in a plea agreement are conditioned on its satisfaction with the defendant's fulfillment of his obligations, as in this case, the government has not breached its duties under the agreement if the government " 'is honestly, even though unreasonably, dissatisfied.' " *Smith*, 1993 WL 276930, at *4 (quoting Restatement (Second) of Contracts § 228, comment a); *see also United States v. Pollack*, 91 F.3d 331, 336 (2d Cir.1996). Thus, in this case, defendant must prove by a preponderance of the evidence that the Government breached the Plea Agreement by

refusing to file a downward departure motion based on some unconstitutional motive, a purpose not rationally related to a legitimate government end or bad faith, rather than honest dissatisfaction with defendant's cooperation and an honest belief that such unsatisfactory cooperation breached the Plea Agreement. *See id.*

### B. Analysis

As explained *supra*, the Plea Agreement conditioned the Government's filing of a downward departure motion upon two requirements. First, the Government had to be satisfied that defendant fulfilled his obligations of cooperation and, second, the Government had to reasonably believe that defendant had provided substantial assistance in the investigation or prosecution of another person who committed an offense. Plea agreements in a number of reported cases have included similar conditions. *See, e.g., United States v. David*, 58 F.3d 113, 114 (4th Cir.1995); *Watson*, 988 F.2d at 549; *United States v. Hoffenberg*, 908 F.Supp. 1265, 1279 (S.D.N.Y.1995).

Defendant contends that he has satisfied both of the conditions of the Plea Agreement. He correctly argues that the Government has conceded that he provided substantial assistance in the investigation or prosecution of others, specifically Jose and Lucy Rosario. Defendant also argues that he has satisfactorily fulfilled his obligation of cooperation and argues that the Government's position to the contrary is without merit for three reasons. First, he maintains that the Government has not adduced sufficient evidence, or at least corroborative evidence, that defendant lied to or omitted information from the Government and thus materially breached the plea agreement. Letter from Robert B. Mozenter, July 1, 1996;[10] *see also* Apr. 12, 1996, Tr. at 6. Second, defendant contends it is unfair that the Government did not move for a departure in his case, considering that "[t]he government has allowed [its] 5K1.1 recommen-

---

9. Defendant filed a Motion to Withdraw Guilty Plea after the Government decided it would not file a downward departure motion. At the hearing on Defendant's Motion on April 8, 1996, defendant withdrew the Motion.

10. A copy of the letter of July 1, 1996 will be docketed.

dations to stand on other defendants in this case [including Jose Rosario] who have lied in the past under oath." Letter from Mr. Mozenter. Third, defendant argues that "reneging on [its] agreement to recommend a 5K1.1 for [defendant] is a clear indication of bad faith." *Id.*

### 1. *Evidence that Defendant Lied to the Government and thus Breached the Plea Agreement*

Defendant was interviewed by the Government on five occasions. The first three interviews, proffer sessions on February 16, 18, and 22, 1994, were conducted before defendant executed the Plea Agreement on March 4, 1994. Thereafter, on March 7, 1994, the Government conducted a substantive interview of defendant. Lastly, defendant was interviewed by Government agents without his attorney on November 9, 1995.

■ At the outset, the Court notes that it only looks to the lies and omissions made at the March 7, 1994 interview in analyzing whether defendant breached the Plea Agreement. Any false statements or omission made in the three February proffer sessions cannot be the basis of a breach of the Plea Agreement because such proffer sessions preceded the date defendant executed the Agreement, which did not incorporate any past conduct, and pled guilty. Additionally, in determining whether defendant breached the Plea Agreement the Court will not consider any false statements or omissions made at the November 9, 1995 interview, in light of the concerns raised by the fact that defense counsel, Mr. Mozenter, was neither aware of nor present at that interview. *See United States v. Ming He,* 94 F.3d 782 (2d Cir.1996), *United States v. Treleaven,* 35 F.3d 458 (9th Cir.1994).

■ Significantly, however, any one false statement or omission amounts to a breach of the Plea Agreement. *United States v. Carrara,* 49 F.3d 105, 107 (3d Cir.1995) ("The fact of the matter is, [defendant] lied. Having done so, he cannot come before the court with unclean hands and request that the government now be ordered to perform his version of equity."); *United States v. Hoffenberg,* 908 F.Supp. 1265, 1276 (S.D.N.Y.)

("Where ... a defendant has promised to disclose truthfully all information about which the Government inquires, any false statement, misleading statement, or omission concerning the defendant's activity or an area about which the Government has inquired, is a material breach of the plea agreement.").

■ Defendant made a number of false statements in his March 7, 1994 interview. Most importantly, although he was specifically asked to identify his cocaine suppliers, defendant did not tell the Government that Robles had supplied him with cocaine. Apr. 26, 1996, Tr. at 75; *see also* Apr. 12, 1996, Tr. at 14–17. That omission is especially significant because defendant was the only cooperating witness who was a party to the transactions in which Robles supplied defendant with cocaine. *See* Apr. 26, 1996, Tr. at 103–04. According to AUSA Schwartz, "[t]hat direct lie is something that the Government cannot tolerate with respect to cooperating witnesses." Apr. 12, 1996, Tr. at 87. Also, defendant did not tell the Government that Katelas worked for him as a drug courier in transporting cocaine to Graham and Andrews in the Baltimore area. *Id.* at 71–73, 82.

These omissions were material and reasonably constituted a breach of the Plea Agreement. *See United States v. Gerant,* 995 F.2d 505, 508–08 (4th Cir.1993) (defendant breached agreement by lying about his role in drug deals); *United States v. Proctor,* 931 F.Supp. 897, 899, 906 (D.D.C.1996) (finding that defendant did not satisfy the terms of cooperation agreement where defendant initially failed to tell the government about two individuals who had long supplied him with drugs, and when confronted with this omission, denied having any information regarding the two suppliers). The Plea Agreement required defendant to "provide all information concerning his knowledge of, and participation in, the distribution of cocaine from in or about March, 1991, through in or about October, 1991, and any other crimes about which he has knowledge." ¶ 2(b). Certainly, defendant's direct dealings with Robles and Katelas in connection with the distribution of cocaine were material facts contemplated by

the Plea Agreement. The Government did not learn of those relationships until Katelas was interviewed in the Fall of 1995, after his arrest. Had defendant disclosed such information to the Government in his March 7, 1994 interview, the Government would have learned before the Fall of 1995 that Robles and Katelas had engaged in drug dealing with defendant, and would have been able to investigate those leads at that time. See Apr. 26, 1994, Tr. at 55. Instead, because the Government was unable to develop sufficient evidence against Robles, due in part to the fact that defendant did not disclose any information regarding Robles to the Government at the March 7, 1994 interview, the Robles investigation was closed in the Fall of 1994 and was not reopened. *See* Apr. 26, 1996, Tr. at 56. And, significantly, even if defendant had corrected his lies and material omissions regarding Robles at a later interview, in light of defendant's dishonesty initially, the Government would not have been able to use defendant effectively as a cooperating witness against Robles because defendant would have been subject to "harsh cross-examination." *United States v. Brechner*, 99 F.3d 96, 99–100 (2d Cir.1996); *see also United States v. Carrara*, 49 F.3d 105, 108 ("[T]he Government was also put in the unenviable position of having to ascertain what aspect of [defendant's] testimony were true and what aspects were lies.").

■ Defendant's contention that the Government's evidence that defendant failed to truthfully disclose all information was based solely on interviews with Katelas and had not been corroborated is without merit. There is sufficient evidence in the record before March 25, 1996, when the Government stated in its Consolidated Supplemental Sentencing Memorandum that it would not file a downward departure motion on behalf of defendant, to convince the Court that the Govern-

ment satisfactorily corroborated Katelas' statements. The report summarizing Special Agent Hadden's March 21, 1996 interview with Katelas is consistent with the testimony at the hearing by Special Agents Hadden and McGowan and Katelas regarding the information provided by Katelas at his October and early November 1995 interviews.[11] Moreover, Special Agent Hadden stated that Katelas had not provided him with any information which Special Agent Hadden found to be unreliable, *Id.* at 65. Special Agent Hadden also testified that he credited Katelas' statements concerning defendant in the interviews in the Fall of 1995 because Katelas' statements "regarding other subjects had been corroborated by other individuals who had been cooperating at the time." Apr. 26, 1996, Tr. at 60.

Katelas' statement that he served as a courier for defendant, and in that capacity delivered drugs, often with Rosario and on occasion with defendant, to two men in the Baltimore area (Graham and Andrews), Apr. 12, 1994, Tr. at 71–73, is corroborated by information supplied to the Government by Jose Rosario, Graham and even defendant. Defendant's statement on March 7, 1994, describing how he sold cocaine to Graham and Andrews in the Baltimore area, corroborates Katelas' account. Report of March 7, 1994 interview, at 3.[12] Likewise, Jose Rosario's March 14, 1994 statement regarding such sales of cocaine corroborates Katelas' statement: Rosario explained that he transported the cocaine to Graham and Andrews and returned to Philadelphia with the drug proceeds. Report of March 14, 1994 interview, at 1, 2.[13] Moreover, Graham's statement on December 21, 1993 that Graham and Andrews purchased cocaine delivered by Rosario or defendant corroborates Katelas' account. Apr.12, 1996, Ex. D–2, at 2.

---

**11.** Katelas' statement from April 1, 1996 is also consistent with his March 21, 1996 statement and his testimony at the hearing. Regarding his interview with Katelas on April 1, 1996 Special Agent McGowan stated: "My in-depth interview with him led me to believe that he was a credible witness in that he knew facts that I knew as the case agent of this investigation, facts which only would be known by people who participated in the criminal activity." Apr. 26, 1996, Tr. at 83.

**12.** The report of the March 7, 1994 interview was presented to the Court during the hearing and will be received in evidence.

**13.** The report of the March 14, 1994 interview was presented to the Court during the hearing and will be received in evidence.

Similarly, although Katelas was the sole individual who informed the Government that Robles had supplied the cocaine to defendant which defendant sold to Graham and Andrews in the Baltimore area, *see* Apr. 26, 1996, Tr. at 116, 121, Special Agent McGowan testified that circumstantial evidence known to him as the lead agent investigating defendant's case corroborated Katelas' statement. He explained that after defendant stopped working for Paz and after Delapuente was no longer supplying cocaine to defendant, Graham and Andrews continued to receive cocaine. *Id.* at 121. Based on his interview with Graham, Special Agent McGowan also learned that, after defendant's relationships with Paz and Delapuente ended, Graham and Andrews obtained cocaine through defendant. *See* Apr. 12, 1996, Ex. D–2, at 3–4 (report of Special Agent McGowan's interview of December 21, 1993 with Graham); *see also* Apr. 26, 1996, Tr. at 21. And, there is no evidence of any supplier of cocaine to defendant other than Robles after defendant ended his relationships with Paz and Delapuente. Taken collectively, the information known to Special Agent McGowan before March 25, 1996 corroborated Katelas' statement that Robles supplied cocaine to defendant and that defendant sold it to Graham and Andrews.

The Court concludes that although the Government did not reinterview any witnesses other than Katelas before filing its Consolidated Supplemental Sentencing Memorandum on March 25, 1996, in light of the fact that the Government had already gathered credible evidence and sufficient corroboration to support its determination that defendant had lied from the very beginning about material issues, the Government's approach was not inappropriate. And, statements by Rosario and Graham after March 25, 1996 also corroborate Katelas' admission that he was a courier for defendant.

■ Nor does the Court find that the Government's decision was made in a hasty or improper manner. On March 20, 1996, Special Agent McGowan, former AUSA Sud-

dath, and AUSA Schwartz decided to investigate further before making a final decision regarding whether to seek a downward departure for defendant. Apr. 26, 1996, Tr. at 78–80. It was not until Special Agent Hadden reinterviewed Katelas on March 21, 1996 and reported that he still found Katelas to be credible that the Government decided it would not move for a downward departure. *Id.* at 80–81. In addition, AUSA David B. Webb, Chief of the President's Organized Crime & Drug Enforcement Task Force, and AUSA Louis R. Pichini, Chief of the Criminal Division, reviewed and approved this decision. *Id.* at 82.

■ Finally, the Government was not required to afford defendant an opportunity to correct his statements and omissions, especially in view of the fact that, as explained infra, see Part II.B.2, the Government was prejudiced in its investigation of Robles by defendant's initial lies. *See United States v. Brechner,* 99 F.3d 96, 99 (2d Cir.1996) (finding that although defendant had corrected his lies, breach of cooperation agreement was still material); *United States v. Hoffenberg,* 908 F.Supp. 1265, 1280 (S.D.N.Y.1995) ("The government may permit a defendant to cure his dishonesty, but it is not required to do so and certainly need not do so continuously."). Moreover, although not necessary to the Court's decision, it can be argued that defendant passed up an opportunity to cure his breach after stopping the November 9, 1995 interview[14] because he did not contact the agents again and did not accept their offer to take a polygraph examination. That Mr. Mozenter thereafter asked the Government to contact him before interviewing defendant does not alter the fact that neither Mr. Mozenter nor defendant took any affirmative steps to cure defendant's breach.

### 2. Treatment of Jose Rosario vis-a-vis Defendant

■ Second, defendant asserts that the Government's treatment of him, for whom it did not move for a downward departure, relative to Jose Rosario, on whose behalf the

---

**14.** There is no evidence which would even suggest that the Government refused to move for a downward departure motion in retaliation for

defendant's unwillingness to continue with the interview without his attorney.

Government did make such a motion, is evidence of an unconstitutional motive, a purpose not rationally related to a legitimate government end, or bad faith. Defendant's argument is based upon the premise that he and Rosario, in failing to truthfully provide all known information to the Government, acted improperly to the same degree. Defendant's premise is faulty; because there are material differences between their situations, *see generally* Letter from AUSA Schwartz, dated April 29, 1996, at 1–2,[15] the Government was justified in moving for a downward departure for Rosario but not for defendant. *See United States v. Paramo*, 998 F.2d 1212, 1221 (3d Cir.1993), *cert. denied*, 510 U.S. 1121, 114 S.Ct. 1076, 127 L.Ed.2d 393 (1994).

Initially, by way of background, the Court notes that defendant played a more integral role in drug trafficking than did Rosario. Defendant was responsible for coordinating the delivery of Paz's cocaine and distributing cocaine provided by others—Delapuente and Robles. Rosario, on the other hand, assisted defendant in transporting cocaine, serving primarily as a courier. Pre–Sentence Report, ¶¶ 102, 137.

Defendant's direct link with Robles is quite significant in distinguishing defendant from Rosario. Although information from Katelas, initially received in the Fall of 1995, regarding Robles' drug activities in the Philadelphia area corroborated information received in the Summer of 1994 from an individual in Florida, the Government did not believe that its information from Katelas and the Florida informant was sufficient to warrant reopening its investigation against Robles. Apr. 26, 1996, Tr. at 55–56. However, had defendant, who had direct dealings with Robles, disclosed that information to the Government in March of 1994, the Government would have had additional corroborating evidence to consider in connection with the decision in the Fall of 1994 to continue or end the Robles investigation. *See id.* at 57. To the contrary, like Katelas, Rosario did not have direct dealings with Robles, but, like Katelas, either knew of defendant's dealings with Robles through personal observation or conversations with defendant, according to Katelas.[16] Apr. 12, 1996, Tr. at 79–80, 103; Apr. 26, 1996, Tr. at 113. As a result, Rosario, like Katelas, could not have been as valuable a witness in the investigation and prosecution of Robles as defendant.

Additionally, defendant lied in response to direct questioning when asked to identify his cocaine suppliers at his March 7, 1994 interview—and never recanted any of his statements prior to the sentencing phase of his case. Apr. 26, 1996, Tr. at 75; *see also* Apr. 12, 1996, Tr. at 14–17. On the other hand, Rosario corrected his false testimony, at least in part, on the same day on which he was confronted about it. Special Agent McGowan testified that this distinction was a significant factor in deciding not to file a downward departure motion for defendant but to file such a motion on behalf of Rosario. Apr. 26, 1996, Tr. at 87, 103; Government's Supplemental Memo. Regarding its Decision to Not File a Downward Departure Motion, at 2. Although Rosario recanted his statements regarding only Katelas, not Robles, and, even then, was not completely forthcoming, according to Special Agent McGowan, Apr. 26, 1996, Tr. at 114, it was significant to the Government that he admitted he lied, and corrected his statements to some extent, as compared to defendant who did not admit his mendaciousness to any extent. Thus, rather than not moving for a downward departure for Rosario, the Government opted to make that information known to the Court at Rosario's sentencing, Apr. 26, 1996, Tr. at 85–86, and asked for a limited departure. Apr. 11, 1996, Rosario Sentencing Tr. at 10–

15. A copy of the letter of April 29, 1996 will be docketed.

16. The Government was not able to corroborate Katelas' statement that he and Rosario were present when defendant purchased cocaine from Robles. Defendant never confirmed this statement. Although Rosario admitted in his April 5, 1996 interview that he had seen defendant and Robles together, he stated that he did not know the purpose of their meetings. *See* Apr. 26, 1996, Tr. at 121 (Special Agent McGowan testified: "That portion [that Katelas was present when cocaine was supplied by Robles to defendant] is not corroborated from Rosario.").

11, 22.[17]

### 3. The Change in the Government's Position Regarding the Filing of a Downward Departure Motion

 The Government's final decision not to file a downward departure motion, after having stated in its Consolidated Sentencing Memorandum dated June 13, 1994 that it had decided to do so, was not made with an unconstitutional motive, a purpose not rationally related to a legitimate end or bad faith. The Plea Agreement conditioned the Government's obligation to file a downward departure motion upon two requirements: the Government in its sole discretion must determine that defendant provided both (1) complete and truthful cooperation and (2) substantial assistance in the investigation or prosecution of another person. In the Consolidated Sentencing Memorandum the Government stated that defendant's cooperation was "fair," and noted that "[t]o date" he had failed to admit or refute his alleged involvement in the theft of drug proceeds. Consol. Sent. Memo. at 21. Nevertheless, the Government explained that "he should receive full credit for having another defendant [Jose Rosario] plead guilty after [defendant] decided to cooperate" and because defendant "was willing to testify against Lucy Rosario, but ultimately was not needed." Id.[18]

The Government's subsequent discovery of defendant's incomplete and false cooperation justified it in reversing its initial decision. See United States v. Edwin Ramos, 971 F.Supp. 199, 209 (E.D.Pa.1997). It is clear that the Government did not become aware of defendant's lies and omissions regarding Robles and Katelas until the Fall of 1995,

long after it had filed its Consolidated Sentencing Memorandum in June 1994. Thus, in March 1996, by which time the Government had established through sufficiently corroborated information that defendant had failed to provide complete and truthful cooperation, the Government could, in good faith, refuse to file a downward departure motion because defendant had failed to satisfy the first of the two pre-requisites for the filing of such a motion. See United States v. Stringfellow, No. 95–1397, 89 F.3d 851, 1996 WL 315750 (10th Cir. June 5, 1996) (where defendant breached plea agreement by not appearing for sentencing Government was justified in withdrawing motion for downward departure, which had been filed the day before the scheduled sentencing) (unpublished opinion), cert. denied, —— U.S. ——, 117 S.Ct. 435, 136 L.Ed.2d 333 (1996).[19] Moreover, because the Plea Agreement provides that any untruthful cooperation may void the Agreement, the Government would have been justified in voiding the entire Agreement, not just the provisions relating to a downward departure motion for substantial assistance.

### III. Conclusion

The Court concludes that defendant has not met his burden of proving by a preponderance of the evidence that the Government acted with an unconstitutional motive, a purpose not rationally related to a legitimate government end or in bad faith in refusing to file a downward departure motion. The Government did not breach the Plea Agreement. Rather, after carefully considering the record, the Court finds that there was sufficient evidence to justify the Government's determination that defendant lied and withheld

---

**17.** Defendant also points to the fact that Rosario, like defendant, refused to take a polygraph examination as required by the Plea Agreement as evidence that the Government acted in bad faith in moving for a downward departure for Rosario but not for defendant. The Court recognizes this fact, but concludes that it is insufficient to establish that the Government acted with an unconstitutional motive, a purpose not rationally related to a legitimate government end or bad faith, particularly in view of the absence of any evidence that the Government relied upon defendant's failure to take a polygraph examination in not filing a downward departure motion on his behalf.

**18.** The remarks in the Consolidated Sentencing Memorandum reflected the Government's current assessments and did not modify the Plea Agreement. See United States v. Resto, 74 F.3d 22, 26–27 (2d Cir.1996); United States v. Juliano, 947 F.Supp. 777, 789 (D.N.J.1996); compare United States v. Martin, 25 F.3d 211, 217 (4th Cir.1994).

**19.** The Court recognizes that this unpublished opinion is of no precedential value but finds it instructive.

material information in his March 7, 1994 interview and thus breached the Plea Agreement. The Court also finds that the Government acted both reasonably and fairly in refusing to file a motion for downward departure on behalf of defendant, even after it had previously stated in its Consolidated Sentencing Memorandum that, at that time, it had decided to file such a motion. Similarly, because the Court concludes that there were material differences between the conduct of Rosario and defendant, the Government was further justified in moving for a downward departure on behalf of Rosario while refusing to do so on defendant's behalf. As a result, defendant's request for an order compelling the Government to file a downward departure motion will be denied.